**ATLANTIC CITY ELECTRIC COMPANY et al., Plaintiffs,**

v.

**GENERAL ELECTRIC COMPANY et al., Defendants.**

United States District Court
S. D. New York.
July 11, 1962.

See also 207 F.Supp. 620.

Webster, Sheffield, Fleischmann, Hitchcock & Chrystie and Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiffs Atlantic City Electric Co. and others; Milton Handler, Bethuel M. Webster, Edward M. Freeman, and James B. Henry, Jr., New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for plaintiffs Consumers Power Co. and others.

Leboeuf, Lamb, Leiby, New York City, for plaintiffs Arkansas Power & Light Co. and others; Horace R. Lamb and Taylor R. Briggs, New York City, of counsel.

Reid & Priest and Coudert Brothers, New York City, for plaintiffs Dallas Power & Light Co. and others; Joseph A. McManus, Clifford D. Root and James C. Pressey, New York City, of counsel.

Thomas F. Moore, Jr., New York City, for plaintiff Power Authority of New York; Scott B. Lilly, New York City, of counsel.

Louis J. Lefkowitz, New York City, for plaintiffs People of State of New York and others; Mathias Lloyd Spiegel, Albany, N. Y., of counsel.

Sidney Goldstein, New York City, for plaintiff Port of New York Authority; Nathaniel Fensterstock and Milton H. Pachter, New York City, of counsel.

Naylon, Foster, Dean & Aronson, New York City, for plaintiffs New York State Electric & Gas Corp. and others; Edward F. Huber, New York City, of counsel.

White & Case, New York City, for defendant General Electric Co.; Edgar E. Barton, New York City, of counsel.

Austin, Burns, Appell & Smith, New York City, for defendant Ingersoll-Rand Co.; Joseph W. Burns, New York City, of counsel.

Brown, Wood, Fuller, Caldwell & Ivey, New York City, for defendant A. B. Chance Co.

Hughes, Hubbard, Blair & Reed, New York City, for defendant Allen-Bradley Co.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendants Allis-Chalmers Manufacturing Co. and others.

Wickes, Riddell, Bloomer, Jacobi & McGuire, New York City, for defendants C. H. Wheeler Manufacturing Co. and others.

Richard Owen, New York City, for defendant Cole Electric Products Co.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendants Cornell-Dubilier Electric Corp. and others.

Kissam & Halpin, New York City, for defendant Cutler-Hammer, Inc.

Meyer, Kissel, Matz & Seward, New York City, for defendant Foster-Wheeler Corp.

Alexander & Green, New York City, for defendants H. K. Porter Co., Inc. and others.

Satterlee, Warfield & Stephens, New York City, for defendant Hubbard & Co.

Haight, Gardner, Poor & Havens, New York City, for defendant I–T–E Circuit Breaker Co.

Stickles, Hayden, Young, Kennedy & Hort, New York City, for defendants Joslyn Mfg. & Supply Co. and others.

Casey, Lane & Mittendorf, New York City, for defendant Kuhlman Electric Co.

Cleary, Gottlieb & Steen, New York City, for defendants Moloney Electric Co. and others.

Sheridan & Madigan, New York City, for defendant Murray Electric Co.

Kupfer, Silberfeld, Nathan & Danziger, New York City, for defendant Norbute Corp.

Laporte & Meyers, New York City, for defendant Schwager-Wood Corp.

Clark, Carr & Ellis, New York City, for defendant Southern States, Inc.

Allan D. Emil, New York City, for defendant Square D Co.

Close, Griffiths, McCarthy & Gaynor, New York City, for defendant Ward Leonard Electric Co.

Cravath, Swaine & Moore, New York City, for defendant Westinghouse Electric Corp.

Gallop, Climenko & Gould, New York City, for defendant Worthington Corp.

FEINBERG, District Judge.

Defendants in 418 related treble damage actions [1] brought under the Clayton Act (15 U.S.C.A. § 15) have moved under Rule 12(f), Fed.R.Civ.P., 28 U.S. C.A., to strike material from plaintiffs' complaints. Plaintiffs are public utilities, state and local governmental agencies or units and industrial corporations. Defendants include large national manufacturers of heavy electrical equipment. Comparable private treble damage suits have been instituted over the nation and roughly 1800, including those in this District, are now pending. The impetus for

---

1. Each action affects two or more defendants; 39 have been named in all. There are over 100 plaintiffs in the actions which state more than 1700 claims.

this massive litigation was supplied by criminal and civil injunctive proceedings brought by the United States Government against many of these defendants in 1960 in the Eastern District of Pennsylvania; the complaints before this Court were filed between November 1961 and March 1962.

The complaints generally allege that defendants combined and conspired to fix prices and rig bids with respect to the sale of specified electrical equipment,[2] and that plaintiffs' damages are based on their purchases from defendants during a period ranging from at least the 1940's to 1960.[3] Most of the complaints also allege that defendants actively and fraudulently concealed the existence of the alleged conspiracy, and that plaintiffs neither knew of the conspiracy nor, by the exercise of reasonable diligence, could have gained knowledge of its existence until they learned of the government suits in 1960.

Three motions by defendants were brought on by notice of motion dated May 25, 1962; on successive days in June, the motions were ably argued on the basis of thorough and well-reasoned briefs. The first motion, to which this opinion is limited, is based upon the applicable four-year statute of limitations, Section 4B of the Clayton Act ("Section 4B").[4] Defendants move to strike from the complaints all allegations of damages claimed for any period prior to the time period indicated by Section 4B and the related Section 5(b),[5] as well as allegations of fraudulent concealment of any alleged unlawful combination or conspiracy. Illustrative of allegations to which this motion is addressed are these:

"Beginning at least as early as January 1948 and continuing thereafter until at least as late as June 1960, the defendants, co-conspirators and other persons presently unknown have engaged in a combination and conspiracy in restraint of interstate trade and commerce in turbine-generators in violation of § 1 of the Sherman Act (15 U.S.C. § 1).

\*  \*  \*  \*  \*  \*

"The defendants and co-conspirators used various devices and practices to conceal the existence of their conspiracy  \*  \*  \*.  The defend-

---

2. The general product groups affected by the alleged conspiracies are: bushings, circuit breakers, condensers, distribution transformers, hydro-electric generators, industrial control equipment, instrument transformers, insulators, isolated phase buses, lightning arresters, low voltage distribution equipment, low voltage power circuit breakers, meters, network transformers, open fuse cutouts, power capacitors, power switchboards and control equipment, power switchgear assemblies, power switching equipment, power transformers, turbine generators.

3. The initial and terminal dates of the alleged conspiracies and the dates of alleged purchases by plaintiffs vary. In some cases the conspiracies alleged began as late as January 1956 and January 1958 so that limitations problems in these actions are absent or perhaps minimal.

4. "Limitation of actions. Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action ac-

crued. No cause of action barred under existing law on the effective date of this section and sections 15a and 16 of this title shall be revived by said sections." 15 U.S.C.A. § 15b.

5. "Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however*, That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued." 15 U.S.C.A. § 16(b).

ants and co-conspirators also rigged price quotations and bids to purchasers and so represented their prices to plaintiffs as to create the semblance of competitive bidding and pricing and thereby deceived plaintiffs into thinking that they were receiving competitive prices. By reason of these and other deliberate acts, the defendants and co-conspirators fraudulently concealed the existence of their combination and conspiracy and plaintiffs had no knowledge and could not by the exercise of reasonable diligence have obtained knowledge of the existence of the combination and conspiracy until the institution of the proceedings described in paragraph 15." [6]

▅ The crucial question for determination is one of statutory construction; i. e., is Section 4B construed to allow its four-year time period to be tolled by fraudulent concealment? In support of the proposition that it is not,[7] defendants, *inter alia*, rely on the wording of the statute, the legislative history of Section 4B, and a contention that the statute cannot be suspended on a nonstatutory ground because it is substantive and not procedural in character. Plaintiffs argue principally that a doctrine of fraudulent concealment is read into every federal statute of limitations; the legislative history of Section 4B demonstrates that fraudulent concealment applies to private damage actions for antitrust violations, "artificial"

formulae such as "substantive-procedural" notwithstanding, and the Court of Appeals for the Second Circuit in Moviecolor, Ltd. v. Eastman Kodak Co.[8] has held that fraudulent concealment tolls Section 4B of the Clayton Act.

I am persuaded that Moviecolor provides the complete answer to all of defendants' contentions; therefore, I will discuss the case in some detail. Initially, I note that the parties concede that Section 4B applies to cases filed after January 7, 1956, whatever the date of accrual of the cause of action;[9] they differ only on the effect of concealment.

## I

Moviecolor was an action for treble damages under Section 4 of the Clayton Act. Plaintiff Moviecolor was a British corporation formed in 1929 and dissolved in 1939. Its action presumably accrued in 1929 or the early 1930's but was not brought until 1959.[10] Section 4B was asserted as a defense in the answers. Defendants then moved for judgment on the pleadings under Rule 12(c), Fed.R.Civ.P., claiming that the action was barred by "both the applicable state and federal statutes of limitations."

The District Court judge granted the motion. He pointed out that Section 4B had become effective on January 7, 1956, that prior to that time the federal courts looked to the statute of limitations of the states in which they sat, and that Sec-

---

6. 61 Civ. 4258, paras. 12, 16.

7. "Defendants contend that all causes of action accruing more than four years prior to the date of institution of the proceedings by the United States relative to the same product and matter complained of in each complaint are barred. * * * Where no proceeding by the United States related to the same matter and product covered by a complaint, or where a defendant here was not a party to a proceeding related to such matter and product, all claims asserted therein which accrued more than four years prior to the filing of the complaint are barred." Brief for Defendants, pp. 2–3.

8. 288 F.2d 80, cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961) aff'g 1960 Trade Cas. ¶69,692 (S.D.N.Y.1960).

9. See Herman Schwabe, Inc. v. United Shoe Machinery Corp., 274 F.2d 608 (2 Cir.) cert. denied, 363 U.S. 811, 80 S.Ct. 1247, 4 L.Ed.2d 1153 (1960) (4B to be given retroactive interpretation). My opinion does not deal with the question of when the various causes of action accrued.

10. The action, brought by a "liquidator" of plaintiff corporation named in 1955, was characterized by one of the defendants as a "stale claim by a phantom plaintiff."

tion 4B made clear that if, on its effective date, state law barred the claim, Section 4B would not revive it. Therefore, he examined the New York statute of limitations (New York Civil Practice Act, § 48(2)) to see whether the claim was barred on January 7, 1956. The District Court judge held that under New York law fraudulent concealment did not toll the New York statute of limitations. The crucial issue, therefore, was whether what he called "the federal equitable doctrine" of Bailey v. Glover, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1874) was available to toll the state statute. He concluded that it was not, even though the action was brought to enforce a federally created right, because the action was at law rather than in equity. It is clear from the opinion that the District Court would have reached a contrary result, on the authority of Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), had the action been in equity.

Thereafter, plaintiff appealed. In an opinion by Judge Friendly speaking for a unanimous Court, the reasoning of the holding below was explicitly overruled. The Court stated (288 F.2d at 83):

> "We hold that the federal rule as to the effect of concealment on the running of a period of limitation applies to an action for treble damages under the Clayton Act even when a state statute is used to measure the period * * *."

The Court of Appeals, however, did not reverse the judgment of the District Court. It went on to consider the additional question of whether plaintiff's complaint alleged facts sufficient to bring it "within the federal concealment rule."[11] Since it concluded that the complaint did not meet that test, the judgment for defendants was affirmed.

Defendants attempt to minimize the controlling effect of Moviecolor. They urge that Moviecolor is not a holding that the fraudulent concealment doctrine applies to Section 4B but is *dictum* at best, that the decision applies only to a state statute of limitations, and is inapplicable to the main issue here.[12] They attempt to buttress this position by contending that the issue of whether Section 4B is tolled by fraudulent concealment was not fully briefed before the Court of Appeals.[13] However, analysis of Moviecolor compels the conclusion that the appellate court necessarily found that fraudulent concealment applies to Section 4B.

The complaint in Moviecolor was filed in 1959 on a claim which had aged for almost 30 years. The lower court explicitly,[14] and the Court of Appeals implicitly, recognized that Section 4B applied to the complaint before it.[15] If the doctrine of fraudulent concealment did not apply to the action in Moviecolor and, therefore, did not toll the four year time limit of Section 4B, then the action was clearly barred since the claim arose almost 30 years before. Only if the doctrine of fraudulent concealment *did* apply and *did* toll Section 4B was it necessary for the Court of Appeals to reach the next question: was the action already barred by state law before the effective date of Section 4B? This inquiry was required because Section 4B also states that no action already barred under state law prior to the effective date of Section 4B shall be revived by Section 4B.[16] This, too, had been recognized by the Court below.[17] Therefore, to

---

11. 288 F.2d at 86.

12. Brief for Defendants, pp. 44, 47. Consistent with that position, defendants do not argue that the actions are barred by state statute.

13. Reply brief for Defendants, p. 36.

14. 1960 Trade Cas. at 76,727.

15. The Schwabe case, supra note 9 made this clear.

16. "No cause of action barred under existing law on the effective date of this section * * * shall be revived * * *." 15 U.S.C.A. § 15b.

17. 1960 Trade Cas., at 76,728.

reach the ultimate issue decided in Moviecolor—that the federal fraudulent concealment doctrine also tolled the New York statute of limitations—the Court of Appeals first decided that fraudulent concealment was an existing federal doctrine and that it attached to Section 4B.

The Court of Appeals further decided, on policy grounds and the imputed purpose of Congress, that a uniform rule was to be preferred in the federal courts on the effect of the wrongdoer's concealment on the measuring period. This explains the significance of the word "even" in the holding already quoted above (288 F.2d at 83):

> "the federal rule as to the effect of concealment on the running of a period of limitation applies to an action for treble damages under the Clayton Act *even* when a state statute is used to measure the period \* \* \*." (emphasis supplied).

The Court was satisfied that the result was in accord with legislative intent. Thus, it stated (id. at 84):

> "It seems far more likely that Congress would have desired the federal suitor it was creating to have the benefit of the federal rule prolonging the period of suit during concealment by the wrongdoer. This is particularly so when, as under the Clayton Act, enforcement of the right often serves not merely private but public ends. \* \* \*"

It reinforced this reference to Congressional intent by the following footnote (ibid.):

> "The debates on the 1955 amendment of the Clayton Act to provide its own period of limitation for

treble damage actions, 69 Stat. 283, include statements by Representative Celler, chairman of the House Judiciary Committee, in answer to a question by Representative Patman, that under existing law the period of limitation ran only from discovery and that the new statute would not change that. 101 Cong.Rec. 5129, 5130, 5133 (1955)."

Moviecolor makes abundantly clear the view of the Court of Appeals that fraudulent concealment applies to Section 4B.[18] It is this view which defendants say is *dictum* and may, therefore, be disregarded. Whether that view is *dictum* is questionable, since I believe it was an essential element in the process of decision. But, in any event, even if it is *dictum,* its controlling effect is undiminished. Although the appeal could have been disposed of on the basis of the inadequacies of the complaint alone, the Court of Appeals made clear that it would consider broader issues and why it was doing so (288 F.2d at 83):

> "we affirm on the ground that the complaint does not contain allegations sufficient to bring plaintiff within this federal rule. Although we could dispose of this appeal solely on the latter ground, we think it proper to deal also with the important question of law decided by the District Court, since the issue has been fully argued, the decisions in the Southern District are in conflict, and the problem is likely to recur."

Therefore, it underlined the fact that its views on the subject of "the federal rule as to the effect of concealment on the running of a period of limitations" were carefully considered.[19] Moreover, the

18. Cf. 75 Harv.L.Rev. 627 (1962) which criticizes the court's failure to borrow the entire New York law on fraudulent concealment, but states (at p. 629): "That the New York legislature did not include a rule of concealment may be the reason that it made the period of limitations as long as six years; in the recently enacted federal statute that now

governs limitations in Clayton Act suits, for example, the specified period is four years, *and, of course, concealment applies.*" (emphasis supplied).

19. See General Electric Co. v. Hygrade Sylvania Corp., 61 F.Supp. 476, 525–526 (S.D.N.Y.1944) ("judicial" and "obiter" dicta distinguished); United States

argument that Moviecolor should be disregarded because the question was inadequately presented to the Court of Appeals rests upon a number of questionable hypotheses. It assumes that even if this assertion were true, this Court should disregard the judgment of its senior court. It assumes that because the legislative history of Section 4B was not briefed in the Court of Appeals in Moviecolor, that Court's study of the legislative history was incomplete. It further assumes that because some of the cases upon which defendants rely were not discussed in the opinion of the Court of Appeals, they may not have been considered by that Court, and that consideration of these cases would lead to a different result.[20] I cannot agree with these assumptions. Accordingly, on what I conceive to be the clear authority of Moviecolor, defendants' motion is denied.[21] On this view of the case, it is not necessary to deal with the other contentions of the parties.

## II

Under 28 U.S.C. § 1292(b), an interlocutory appeal otherwise not available may be had in a civil action if the District Judge "shall be of the opinion" that the order in question: (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." [22] Since this antitrust litigation exemplifies the type of case which in part prompted the enactment of Section 1292(b),[23] I will consider the

v. Ellis, 264 F.2d 325, 328 (2 Cir. 1959) ("frequently the pronouncement characterized as dictum rests upon a quite solid foundation"); but cf. Cohens v. Virginia, 6 Wheat. 264, 19 U.S. 264, 399, 5 L.Ed. 257 (1821); Nolan v. Transocean Air Lines, 290 F.2d 904, 906 (2 Cir.), cert. denied, 368 U.S. 901, 82 S.Ct. 177, 7 L.Ed.2d 96 (1961).

20. Defendants urge that the Court of Appeals would reconsider its action in the light of United States v. Borin, 209 F.2d 145 (5 Cir. 1954) or its earlier decision in Pollen v. Ford Instrument Co., 108 F.2d 762 (2 Cir. 1940). But the Pollen case was cited by defendant Eastman Kodak both to the District Court and the Court of Appeals in Moviecolor (see memorandum in support of its motion in the District Court to dismiss the complaint, p. 14; brief of defendant-appellee in the Court of Appeals, p. 29). In addition, the Borin case was cited to the District Court (defendant Eastman Kodak memorandum op. cit. supra p. 18). But cf. Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) and Grossman v. Young, 72 F.Supp. 375 (S.D.N.Y.1947) which plaintiff cited to the Court of Appeals in Moviecolor. Brief for plaintiff-appellant pp. 9, 10, 18.

21. Cf. Gaetzi v. Carling Brewing Co. (E. D.Mich.1962), 205 F.Supp. 615 (doctrine of fraudulent concealment held applicable to Section 4B, but motion for summary judgment granted; doctrine held inapplicable on the undisputed facts); Dovberg v. Dow Chemical Co., 195 F.Supp. 337 (E.D.Pa.1961) (motion for summary judgment on the ground that Section 4B barred the claim denied, holding that complaint sufficiently alleged fraudulent concealment); a contrary holding, according to the information furnished the Court, has been made in Brigham City Corp. v. General Electric Co. (D.Utah 1962) (unreported).

22. Section 1292(b) also provides that: "The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken * * *."

23. "The bill results from a growing awareness of the need for expedition of cases pending before the district courts. * * *

"There are many civil actions from which * * * illustrations could be furnished. For example, in an antitrust action a plea may be entered that the claim is barred by the statute of limitations. If this motion is denied, under existing law the matter is not appealable and the case then goes forward to trial. Disposition of antitrust cases may take considerable time, yet upon appeal following final disposition of such cases, the court of appeals may well determine that the statute of limitations had run and for that reason the district court did not have jurisdiction." S.Rep.No.2434, 85 Cong. 2d Sess., reprinted in U.S.Code

question of whether to certify an appeal from the order to be entered on this motion.

The first and third statutory criteria stated above are clearly met. Herman Schwabe, Inc. v. United Shoe Machinery Corp., 274 F.2d 608 (2 Cir.) cert. denied, 363 U.S. 811, 80 S.Ct. 1247, 4 L.Ed.2d 1153 (1960); Banana Distributors, Inc. v. United Fruit Co., 269 F.2d 790 (2 Cir. 1959). As to the second, the practical problem here is whether a four year cut-off period will be applied to claims which might otherwise, in some cases, go back to the 1940's. Determination of this question affects the scope of discovery procedure, the length and complexity of ultimate trial, and the expenditure of time, money and effort which these cases will engender. These are strong reasons for having the issue of construction of Section 4B conclusively determined and determined expeditiously. Therefore, in determining whether there is "substantial ground for difference of opinion" as to the conclusive effect of Moviecolor, a narrow approach is not justified. While I believe Moviecolor decided the issue of construction of Section 4B, I also feel that there is "substantial ground for difference of opinion" as to whether it did. On the related question of whether there is substantial ground for difference of opinion on the construction of Section 4B if Moviecolor is not deemed to be controlling, the test is clearly met. Without exploring the parties' contentions, their extensive analysis of the legislative history of Section 4B makes clear that here is an issue which is substantial.

Accordingly, the order will provide that I am of the opinion that the order involves a controlling question of law as to which there is a substantial ground for difference of opinion, and that immediate appeal from the order may materially advance the ultimate termination of the litigation.

Settle order on notice.

Cong. & Adm. News, pp. 5255, 5256 (1958). See Milbert v. Bison Labora-

tories, Inc., 260 F.2d 431, 433 (3 Cir. 1958).