KANSAS CITY, MISSOURI, a municipal corporation, Plaintiff,

v.

FEDERAL PACIFIC ELECTRIC COMPANY, Defendant.

KANSAS CITY, MISSOURI, a municipal corporation, Plaintiff,

v.

GENERAL ELECTRIC COMPANY, Defendant.

Civ. A. Nos. 13709-1 and 13710-2 (consolidated with Civ. A. No. 13608-4).

United States District Court
W. D. Missouri, W. D.

Aug. 4, 1962.

William F. Mauer, of Krings, Whipple, Baker & Mauer, Kansas City, Mo., for plaintiff, City of Kansas City, Mo.

Joseph J. Kelly, Jr., Howard F. Sachs, of Spencer, Fane, Britt & Browne, Kansas City, Mo., for plaintiffs Kansas City Power and Light Company, Missouri Public Service Company, and St. Joseph Light and Power Company.

Alvin D. Shapiro, Dick H. Woods, of Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., for plaintiffs Kansas Power and Light Company, Kansas Gas and Electric Company, The

Empire District, Western Light and Telephone, and Central Kansas Power.

Thomas O. Pickett, Russell N. Pickett, of Pickett, Andereck & Hauck, Trenton, Mo., for plaintiffs N. W. Electric Power Cooperative, Central Power, Sho-Me, City of Trenton, Missouri, City of Kennett, Pemiscot-Dunklin Electric Cooperative, Inc., M. and A. Electric Power Cooperative and Grundy Electric Cooperative.

James C. Wilson, Sheridan Morgan, Kansas City, Mo., for defendants Federal Pacific Electric Company, Joslyn Manufacturing and Supply Company, Cornell-Dubilier Electric Corporation, Southern States Electric Corporation, and Porcelain Insulator Corporation.

Jacob Imberman, New York City, for defendants Federal Pacific Electric Company and Cornell-Dubilier Electric Corporation.

Roy P. Swanson, Ralph M. Jones, Charles B. Blackmar, John J. Kitchin, of Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, Mo., for defendant General Electric Company.

Henry Andrae, Jefferson City, Mo., for defendant General Electric Company.

Carl E. Enggas, Henry N. Ess, Colvin A. Peterson, Jr., of Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendants Allis-Chalmers Manufacturing Company, Allen-Bradley Company, The Clark Controller Company, Cutler-Hammer, Inc., Lapp Insulator Company, McGraw-Edison Company, and Ohio Brass Company.

William E. Kemp, Paul G. Koontz, Thomas J. Wheatley, of Kemp, Koontz, Clagett & Norquist, Kansas City, Mo., for defendants A. B. Chance Company, Moloney Electric Company, Wagner Electric Company, and Schwager-Wood Corporation.

David R. Hardy, John C. Dods, of Sebree, Shook, Hardy & Ottman, Kansas City, Mo., for defendant Carrier Corporation.

Ralph L. Alexander, Fred Dannov, Columbia, Mo., Joseph W. Burns, New York City, for defendants The Foster-Wheeler Company, Ingersoll-Rand Company, and Worthington Corporation.

Paul Van Osdol, of Terrell, Hess, Van Osdol & Magruder, Kansas City, Mo., for defendant H. K. Porter Company, Inc.

William H. Curtis, Martin J. Purcell, of Morrison, Hecker, Buck & Cozad, Kansas City, Mo., for defendants I-T-E Circuit Breaker Company and Sangamo Electric Company.

William H. Sanders, Larry L. McMullen, of Caldwell, Blackwell, Sanders & Matheny, Kansas City, Mo., for defendant Kuhlman Electric Company.

Roy Dietrich, Heywood Davis, of Dietrich, Tyler, Davis, Burrell & Dicus, Kansas City, Mo., for defendant The Square-D Company.

Richard S. Righter, William M. Stapleton, Jack W. R. Headley, of Lathrop, Righter, Gordon & Parker, Kansas City, Mo., for defendant Westinghouse Electric Corporation.

Kenneth Teasdale, Edwin S. Baldwin, of Armstrong, Teasdale, Roos, Kramer & Vaughan, St. Louis, Mo., for defendant Westinghouse Electric Corporation.

BECKER, District Judge.

These two cases are antitrust actions at law for treble damages under Section 4 of the Clayton Act (15 U.S.C.A. § 15) based upon alleged conspiracies in violation of Section 1 of the Sherman Anti-Trust Act (15 U.S.C.A. § 1). The actions arise out of the same alleged conspiracies which were the basis for indictments of manufacturers of electrical equipment products in the United States District Court for the Eastern District of Pennsylvania at Philadelphia in 1960, followed by convictions in 1961. Both actions were filed February 9, 1962.

These two cases are a part of the mass of civil antitrust cases filed in the United States District Courts following the indictments and convictions in Philadelphia. The number of such cases filed and pending in the nation presently exceeds 1700. Each of these

cases is a "Big Case" and is properly classifiable as protracted litigation under the procedures for identification and processing of such cases, developed and published under the auspices of the Judicial Conference of the United States. (Report of Judicial Conference Study Group on Pretrial Procedure in Protracted Litigation (1960) 25 F.R.D. 351.)

This mass of litigation challenges the capacity and ability of the judicial system of the United States to perform its task of administering the antitrust laws of the United States in particular and to administer justice under law in general. (To meet this challenge and to assist the United States courts struggling with the adjudication of these cases, a national Coordinating Committee for Multiple Litigation has been created of which Chief Judge Alfred P. Murrah (C.A.10) is chairman. This Committee has established a principal office in Chicago. The Committee is issuing recommendations for cooperative national action by the district courts and is disseminating informative material to the courts.)

One of the legal problems demanding earliest solution in order to provide a guide to courts and litigants for pretrial proceedings, trial, and any settlement negotiations that may occur, is the construction to be given to the applicable statute of limitations, Section 4B of the Clayton Act (15 U.S.C.A. § 15b), which is dealt with in this memorandum opinion. It is imperative that this question be promptly decided at the highest judicial level at the earliest time consistent with law. Until this question is settled, the scope of discovery cannot be settled by the trial courts; the pleadings cannot be settled; the potential damages cannot be computed; and settlement negotiations cannot be fully explored in a great number of cases. Therefore, counsel in the 71 cases pending in this district were requested to take steps to expedite final determination of the construction to be given to Section 4B of the Clayton Act

in light of the claim that the four-year period of limitations provided thereby does not begin to run until the plaintiff, in a particular case, knows of the existence of the alleged conspiracy, or by the exercise of reasonable diligence could have learned of the existence thereof.

Fortunately, it was discovered that, in these two actions instituted by the City of Kansas City, all purchases relied upon in the claims for relief occurred in 1954, more than four years prior to the time when the plaintiff alleges it knew, or in the exercise of reasonable diligence could have known, of the existence of the alleged conspiracy.

Counsel for the plaintiff, Kansas City, was granted leave to amend the complaints to aver all facts which might possibly be proved to avoid the limitation of these actions by Section 4B of the Clayton Act.

### AVERMENTS OF THE COMPLAINTS

The First Amended Complaint, in each of these cases, charges the formation and existence of an actionable combination and conspiracy in violation of Section 1 of the Sherman Act, beginning at least as early as 1948, and consequent damage to plaintiff arising out of purchases in the year 1954 only. (The items purchased in Case No. 13709-1 were circuit breakers, and in Case No. 13710-2 were power switching equipment.)

Said complaint in each case charged the indictment of the defendants in the United States District Court for the Eastern District of Pennsylvania on May 19, 1960, and subsequent conviction because of the same alleged conspiracy on which the complaint is based.

In order to show that the actions are not barred by Section 4B of the Clayton Act, the complaint in each case contains a paragraph 13 under the subheading "Fraudulent Concealment" which reads as follows:

"From the inception of the combination and conspiracy between

defendants described in paragraphs 9, 10 and 11, which was at least as early as January 1, 1948, and continuously thereafter until at least May 25, 1960, defendants resorted to and maintained in effect various procedures and means for the purpose of concealing the existence of their conspiracy. These included secret meetings of officers and employees of the defendants at various places in the country, the placing of telephone calls to and from the residences of company representatives rather than their offices, the use of public pay telephones, the use of plain envelopes addressed to the homes of such representatives without any return addresses or other means for identifying the senders, and the concealment or destruction of records respecting the conspiracy. During all of the period of time mentioned above, defendants established and used a scheme or formula designated the "phase of the moon" or "light of the moon" formula, for quoting nearly identical prices to electrical utility companies and municipal corporations, including plaintiff. Code numbers identifying the defendant corporations were used in documents effectuating said "phase of the moon" formula. Through the cyclic rotating positioning inherent in said formula, one defendant corporation would quote the low price, others would quote intermediate prices, and another would quote the high price. These positions were periodically rotated among the defendant corporations and said formula was so calculated that in submitting prices to electrical utility companies and municipal corporations, including plaintiff, the price spread between defendant corporations would be sufficiently narrow so as to eliminate actual price competition among them but sufficiently wide so as to give an appearance of competition. Said formula was de-signed to permit each defendant corporation to know the exact price it and every other defendant corporation would quote on each prospective sale. By the use of said formula and other means defendants rigged price quotations and bids to purchasers, including plaintiff, and so represented their prices to plaintiff as to give the appearance of competitive bidding and pricing and by such means caused plaintiff to believe that it was receiving competitive prices. By such means and through other deliberate acts defendants from the inception of said conspiracy and continuously thereafter until at least May 25, 1960, fraudulently concealed the existence of their combination and conspiracy and plaintiff had no knowledge, nor could it by the exercise of reasonable diligence have obtained knowledge, of the existence of said combination and conspiracy until after the institution of the proceedings described in paragraph 12."

The defendants have moved to dismiss or for summary judgment on the grounds that: (1) plaintiff's complaint under Section 4 of the Clayton Act was filed February 1, 1962, and amended March 3, 1962; (2) the amended complaint shows on its face that the claim for relief of plaintiff accrued more than four years prior to the date upon which plaintiff's complaint was filed; (3) Section 4B of the Clayton Act provides that any cause of action under Section 4 of the Clayton Act shall be forever barred unless commenced within four years after the cause of action accrued; (4) Section 4B of the Clayton Act is substantive rather than procedural in character, is absolute, and cannot be tolled for fraudulent concealment of the cause of action, pending discovery thereof.

The plaintiff has agreed that the motions to dismiss and for summary judgment are in condition for decision on the averments of the First Amended

Complaint. Therefore the rule of Poller v. C. B. S., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458, is not applicable to the motion for summary judgment in these cases.

## DECISION

These cases have been fully and ably briefed and argued in this Court by counsel for the parties and by counsel in the nine companion cases which will be substantially affected by the decision in these cases. The presentation of counsel on both sides deserves a careful review of the arguments, authorities and reasoning. More important, however, is a speedy decision in a form which will reach, as soon as possible, the highest judicial level for review and final determination. At this district court level, and in the present state of the authorities, the question could honestly be decided either way. In fact, the decisions of the district courts on the general question have been conflicting. In order to hasten the full review of the legal questions by the highest court by which they are reviewable, this Court has decided to sustain both the motion to dismiss and the motion for summary judgment, with a brief review of the contentions of the parties and of the friends of the Court, to whom the Court is indebted for their excellent arguments and briefs.

## STATE OF AUTHORITIES [1]

The question presented in these cases has not been directly passed upon by the Supreme Court of the United States. It is claimed by the plaintiff, and denied by the defendants, that the question was decided by the Court of Appeals for the Second Circuit in Moviecolor, Ltd. v. Eastman Kodak Co., 288 F.2d 80. The District Court for the Eastern District of Pennsylvania has upheld the views of the plaintiff in Dovberg v. Dow Chemical Co., 195 F. Supp. 337. The District Court for the Southern District of New York has adopted plaintiff's view of the Moviecolor case in Atlantic City Electric Co. v. General Electric Co., D.C., 207 F. Supp. 613. The Court's attention has been invited to no other decision on the issue accompanied by written opinion.

Therefore, it is concluded that this is an unsettled question of great importance.

## BASIS OF DECISION

The basis for the decision in these cases, that the "fraudulent concealment" averments of paragraph 13 of the complaint do not suspend the running of the four-year period, is the determination that Congress did not intend that the running of the four-year period of limitations be suspended by fraudulent concealment of the prohibited conspiracy.

This conclusion is by no means free of doubt. Cogent arguments can be, and have been, made in support of a contrary determination.

In reaching the determination that Congress did not intend that the running of the statute be suspended by active fraudulent concealment, a distinction is recognized between active fraudulent concealment and lack of discovery by the injured party unaccompanied by activity designed to conceal the existence of the conspiracy. The considerations which have led to the decision made in the cases at bar are the following:

### I.

Section 4B does not contain an express exception suspending the run-

---

[1]. Not including cases involving only state statutes limiting federal actions prior to the enactment of Section 4B. (Since the preparation of this opinion written opinions on the question presented in these cases have been rendered by the following district courts: *accord,* Brigham City Corp. v. General Electric Co. (D.Utah 1962), 210 F.Supp. 574; Public Service Co. of New Mexico v. A. B. Chance Co. (D.N.Mex.1962); *contra,* United States v. General Electric Co. (E.D.Pa.1962) 209 F.Supp. 197; Commonwealth Edison Co. v. Allis-Chalmers Manufacturing Co. (N.D.Ill., E.D.1962) 211 F.Supp. 712; Public Service Co. of Colorado v. Allen-Bradley Co., Allis-Chalmers Manufacturing Co. et al. (D.Colo.1962)).

ning of the four-year period until discovery of the wrong or during the time the wrong was fraudulently concealed, such as contained in the Tariff Act of 1930 (19 U.S.C.A., § 1621) and in the Securities and Exchange Act (15 U.S.C.A. § 78r(c)). Furthermore, section 5(b) creating an exception during the pendency of a civil or criminal proceeding instituted by the United States is evidence of the intent of Congress to limit exceptions to 4B to the provisions of section 5(b) (15 U.S.C.A. § 16). So the Clayton Act is not silent on the subject matter of suspension of the running of, and exceptions to, the limitations set forth in section 4B.

## II.

The legislative history of section 4B in the 81st, 82nd, 83rd and 84th Congresses contains evidence that express provisions suspending the running of the statutes until the date of discovery were deliberately eliminated in the perfection of the Bill before final passage by the 84th Congress. In this connection it is noted that there is a confusing colloquy between Committee Chairman Celler and Congressman Patman on this subject appearing at 101 Congressional Record 5132–5133 which contains ambiguous statements lending some aid to the position of the plaintiff. (A brief summary of legislative history and a transcript of the Celler-Patman colloquy is attached and marked Exhibits A and B respectively.)

## III.

■ The decision of this Court is supported by the long-established rule that, when Congress creates a new right of action and explicitly limits the time in which the action may be brought, the explicit limitation governs and is not affected by the general federal doctrine employed to bar inequitable reliance on statutes of limitation. Some doubt is cast upon the applicability of this rule by Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, l. c. 762, 3 L.Ed.2d 770, l. c. 773. Nevertheless, the rule has been long established in federal jurisprudence and is of some value in ascertaining congressional intent. This rule found its earliest and widest application in the field of conflict of laws in cases involving suits on causes of action created by statute of a state other than the forum, as in statutory actions for wrongful death. Restatement, Conflict of Laws, Sec. 605 (1935); Beale, The Conflict of Laws, Sec. 605. This rule has been followed or recognized in federal jurisprudence in the following cases, among others:

State statutes involved: Davis v. Mills, 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067; The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358.

Federal statutes involved: Midstate Horticultural Co. v. Pennsylvania R. R., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96; William Danzer & Co. v. Gulf & Ship Island R. R., 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 1126; United States ex rel. Louisville Cement Co. v. Interstate Commerce Comm., 246 U.S. 638, 38 S.Ct. 408, 62 L.Ed. 914, all dealing with the Interstate Commerce Act; United States ex rel. Texas Portland Cement Co. v. McCord, 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893, dealing with Materialmen's Act.

■ The rule is applicable even though the period of limitation is provided in a different, subsequent legislative act provided the subsequent act is directed to the legislatively created cause of action. Davis v. Mills, 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067.

The rule seems applicable in a treble damage cause of action, under Section 4 of the Clayton Act, which was created by congressional act in 1914, and which replaced Section 7 of the Sherman Act. Section 4B containing the four-year limitation was enacted in 1955 and became effective in 1956. It became, by amendment, a part of the Clayton Act which created the treble damage cause of action.

■ This rule is characterized by the holding that lapse of the prescribed time operates to extinguish the right, which

is the foundation for the claim, rather than to bar the enforcement thereof. Midstate Horticultural Co. v. Pennsylvania R. R., 320 U.S. 356, l. c. 359, 64 S.Ct. 128, l. c. 129, 88 L.Ed. 96, l. c. 100.

The rule is recognized in Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, relied upon by the plaintiff, in the following language:

> "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive." (327 U.S. l. c. 395, 66 S.Ct. l. c. 584, 90 L.Ed. l. c. 746).

Undoubtedly there are general federal doctrines providing relief for the victims of fraud which are read into every federal statute of limitations where Congress is silent on the matter. Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770. Holmberg v. Armbrecht, supra; Exploration Co. v. United States, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200; Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636; Annotations, 3 L.Ed. 1886, 130 A.L.R. 8, supp. 24 A.L.R.2d 1413. As stated earlier, generally these doctrines are not applicable where there is a newly created statutory cause of action and a special statute explicitly limiting the time for action thereon. But there are cases where the general federal doctrines are applied to special statutes of limitation applicable to legislatively created or expanded causes of action which did not exist before. Glus v. Brooklyn Eastern District Terminal, supra, a unanimous opinion in a Federal Employers' Liability Act case; Annotation, 3 L.Ed.2d l. c. 1888.

All this brings us back to the critical inquiry under Glus and Holmberg, whether in respect of the particular cause of action, Congress has explicitly or clearly indicated its intention to exclude application of general doctrines suspending tolling of, or estopping the application of, statutes of limitations.

Whether the statute clearly shows an intention to exclude the application of general doctrines is a matter of opinion which can be settled finally only by the court of last resort.

## IV.

Some consideration must be given to the subject matter of the new cause of action. It is conceivable that general equitable principles of estoppel may be applicable to limitations in Federal Employers' Liability Act cases involving tort actions by employees, as held in Glus, and the same principles be inapplicable in actions based on conspiracy which is ordinarily secretive in nature. The fact that Congress, in enacting section 4B, was legislating against conspiracies, ordinarily concealed, is entitled to some consideration in determining the Congressional intent.

## V.

■ The foreseeable effects of the application of equitable principles of suspension and estoppel upon the ability of the courts to process anticipated litigation should be given some consideration. In this connection there is the practical consideration that these antitrust cases and other cases ordinarily on the dockets may overtax the capacities of the courts if the period of limitation can be extended backward in time as contended by the plaintiff. Congress should be assumed to have had in mind the capacity of the courts to process the authorized litigation. If plaintiff's contention is sustained there is no definite limit in time beyond which treble damage actions are barred.

For these five reasons, among others, the conclusion is reached that the motions to dismiss and for summary judgment should be sustained.

Before closing, consideration should be given to the Moviecolor case relied upon by the plaintiff.

### THE MOVIECOLOR CASE

■ In a thoughtful opinion, Judge Feinberg of the District Court for the Southern District of New York has

reached a conclusion contrary to that expressed in this memorandum. Atlantic City Electric Co. v. General Electric Co., D.C., 207 F.Supp. 613. This conclusion was based upon an analysis of the opinion of the Court of Appeals for the Second Circuit in Moviecolor, Ltd. v. Eastman Kodak Co., 288 F.2d 80. Moviecolor is binding on the District Courts of the Second Circuit and strongly persuasive in its holding. There is a considerable difference of opinion concerning the interpretation to be given to Moviecolor. There is a serious question whether, viewed in the light most favorable to plaintiff, Moviecolor's holding is *dictum*. The Southern District of New York in Atlantic Electric took the position that even if Moviecolor was *dictum* on this issue, it was controlling. This Court is not compelled to take the same position in the absence of any expression by the Court of Appeals for the Eighth Circuit. Therefore, the refinements of Moviecolor will not be discussed. Judge Feinberg seems to have made a scholarly appraisal of that case in Atlantic Electric, but Moviecolor, although entitled to great respect, is not final in any view because the court rendering the opinion is not the court of last resort.

In addition to those already mentioned, there are other cases supporting plaintiff's view, including the clear holding in Dovberg v. Dow Chemical Co. (E.D.Pa.) 195 F.Supp. 337. They have been given serious consideration in reaching the conclusion expressed herein.

For the assistance of those reviewing this ruling there are attached hereto summaries of the principal points and authorities relied upon by the plaintiff and the defendants in this matter, marked Exhibits C and D respectively.

## EXHIBIT A

### BRIEF SUMMARY OF LEGISLATIVE HISTORY OF SECTION 4B OF CLAYTON ACT

The following list shows the bills considered by various congresses prior to the adoption of H.R. 4954 by the First Session of the 84th Congress:

**81st Congress, 1st Session**

S. 1910, H.R. 4985

(1) a six-year statute of limitations for private treble damage suits;

(2) in the case of conspiracy, six years after the date of discovery of the facts upon which the plaintiff relies.

**81st Congress, 2d Session**

H.R. 7905

(1) United States may recover actual damages;

(2) six-year statute for both Government and private damage suits;

(3) six years after discovery for both United States and private plaintiffs;

(4) suspension of statute during pendency of Government criminal or civil suit applicable to damage suits of United States as well as private plaintiffs;

(5) judgment in Government criminal or civil case conclusive evidence against a defendant in suits for damages both by the United States and private plaintiffs.

H.R. 8763

(1) United States may recover actual damages;

(2) any action for damages by United States or private plaintiffs shall be forever barred unless commenced *within six years after the cause of action accrued*;

(3) suspension of statute during pendency of Government criminal, civil or *damage* suit, applicable to private suits;

(4) judgment in Government criminal or civil case (but not in Government damage suit) *prima facie* evidence in damage suits both by United States and private plaintiff.

82nd Congress, 1st Session

H.R. 3408 and 1323
    identical with H.R. 8763 (1950)

H.R. 1986
    six years after discovery of facts by private plaintiff.

H.R. 109
    treble damages in Government suits.

83rd Congress, 1st Session

H.R. 467

(1) five-year statute of limitations applicable to Government and private damage suits;

(2) when suspended by Government criminal or civil suit, private suit had to be commenced either during period of suspension, or within five years after cause of action accrued;

(3) causes of action barred by state statutes on the effective date of the act would not be revived;

(4) eliminated provision suspending statute during pendency of Government damage suit.

## EXHIBIT B

### CELLER–PATMAN COLLOQUY

"Mr. Patman: Mr. Chairman, after the word 'accrued' in line 7, page 2, I have an amendment prepared to include the phrase 'and became known', so as to make it clear that the cause of action or that limitation would not commence to run against a cause of action until it is discovered, until it became known, and, therefore, I would like to ask the chairman of the committee this question: Is it your understanding, Mr. Chairman, that the cause of action will not commence to run, the limitation will not commence to run on the cause of action until after it is discovered, 4, 6 or 10 years hence?

"Mr. Celler: The statute of limitations will start running from the time the action accrues, not from the time of discovery. If you make it time of discovery, then you prac-

tically have no statute of limitations at all. An action could have accrued and the person aggrieved might not have heard of it for 20 years. Under the suggested amendment he would have a right to bring an action after 20 years, after the evidence will have been lost, and the defendant would be put in a rather deplorable situation in that regard. *We provide that the 4-year statute shall start to run from the time the wrong was done, not from the time of discovery.*

"Mr. Patman: Even in the case of fraud or conspiracy?

"Mr. Celler: No. In the case of fraud or conspiracy the statute of limitations only runs from the time of discovery.

"Mr. Patman: That is the point I wanted to make sure of. You are not attempting to change that particular part of it?

"Mr. Celler: Not at all.

"Mr. Patman: Mr. Chairman, the proposal for inserting the words 'and become known' after the word 'accrued' in line 7, page 2, is to emphasize and make clear in the law that the period of limitations shall not commence to run until at least covert wrongs have been discovered. We should make certain that in enacting a uniform Federal statute of limitations we will not be acting to limit the damage period to 4 years, even though a monopolistic conspiracy may have lasted for 10 years before the victim even knew of its existence. Perhaps the amendment I propose will not insure fully against such unjust result, but it will serve to improve the provision which has been presented in H.R. 4954 in making certain that the action is not barred until a period of 4 years after the victim learned of the existence of his cause of action." 101 Cong. Rec. 5132–33 (1955).

## EXHIBIT C

### PLAINTIFF'S POINTS AND AUTHORITIES

#### I

The applicability of the Federal Doctrine of Fraudulent Concealment to Section 4B of the Clayton Act is not a case of first impression. Two previous cases have involved the same question and have applied the doctrine to toll Section 4B of the Clayton Act. Moviecolor, Ltd. v. Eastman Kodak Co., 288 F.2d 80 (2nd Cir.1961), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961). Dovberg v. Dow Chemical Co., 195 F.Supp. 337 (E.D.Pa.1961).

Both cases state that the doctrine of Federal Fraudulent Concealment tolls the running of the statute of limitations contained in the Clayton Act.

#### II

The Federal Doctrine of Fraudulent Concealment is read into every statute of limitations governing federally created rights unless a clear unequivocal intent to the contrary is expressed by the Congress. Sherwood v. Sutton, Fed.Cas.No. 12,782, 5 Mason 143 (D.N.H.1828); Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1875); Traer v. Clews, 115 U.S. 528, 6 S.Ct. 155, 29 L.Ed. 467 (1885); Kirby v. Lake Shore & M. S. R. R., 120 U.S. 130, 7 S.Ct. 430, 30 L. Ed. 569 (1887); Exploration Co. v. United States, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200 (1918); Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

It should be noted that the Supreme Court in the Holmberg case states that the equitable doctrine of Fraudulent Concealment is read into every federal statute of limitation.

#### III

The clear expression of the congressional intent requires the application of the Federal Doctrine of Fraudulent Concealment to Section 4B of the Clayton Act.

The Supreme Court of the United States has never refused to apply doctrine of Fraudulent Concealment to any statute of limitation nor has it ever announced that a substantive statute of limitation is immune to equitable considerations. Grossman v. Young, 72 F. Supp. 375 (S.D.N.Y.1947); Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959).

The Glus case would seem to dispel any remaining doubt that equitable considerations can toll a statute of limitation incorporated into a statutory cause of action.

The colloquy between Congressman Patman and Congressman Celler on the floor of the House clearly reveals that Congress intended the doctrine of Fraudulent Concealment would toll the statute of limitation of the Clayton Act (Cong. Rec., Vol. 101, Part 4, pp. 5132–3, 84 Cong.Fed.Sess. (1955) U.S.Code Congressional & Administrative News, p. 308.

> "Mr. Patman: Even in the case of fraud or conspiracy?
>
> "Mr. Celler: No, in the case of fraud or conspiracy the statute of limitation only runs from the time of discovery."

Congressman Celler as chairman of the House Judiciary Committee and Floor Manager of the bill clearly recognized the distinction between a *discovery bill* which was rejected and *the then existing doctrine of Fraudulent Concealment*.

#### IV

The discovery doctrine and the Federal Doctrine of Fraudulent Concealment are absolutely different and have no relation to each other. Tinkoff v. United States, 211 F.2d 890 (7th Cir.1954); Suckow Borax Mines Consolidated, Inc. v. Borax Consolidated, Ltd., 185 F.2d 196 (9th Cir.1950); Moviecolor, Ltd. v. Eastman Kodak Co., 288 F.2d 80 (2nd Cir. 1961), cert. denied, 368 U.S. 821, 82 S. Ct. 39, 7 L.Ed.2d 26 (1961); Dovberg

v. Dow Chemical Co., 195 F.Supp. 337 (E.D.Pa.1961).

**V**

The applicability of the Federal Doctrine of Fraudulent Concealment will not abrogate the congressional intent for uniformity because this doctrine is read into every federal statute of limitation. Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

The language adopted by Congress under which the limitation period begins after a cause of action "accrues" itself indicates that the Fraudulent Concealment Doctrine is applicable, because it has been held that causes of action do not accrue when there is concealment until after the concealment is broken. Exploration Co. v. United States, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200 (1918); Kirby v. Lake Shore & M. S. R. R., 120 U.S. 130, 7 S.Ct. 430, 30 L.Ed. 569 (1887); Kicklighter v. New York Life Ins. Co., 145 F.2d 548 (5th Cir.1944).

**EXHIBIT D**
**DEFENDANTS' POINTS AND AUTHORITIES**

**I**

This is a case of first impression. Cases such as American Tobacco Company, Crummer, Philco, Norman and Moviecolor dealt with state statutes of limitations which were applicable prior to the enactment of Section 4B of the Clayton Act. Since the state statutes were statutes of general application not enacted by the sovereign that created the right which plaintiff asserts, they must be regarded as procedural and subject to the federal rule that procedural statutes are tolled by fraudulent concealment. The discussion of the application of the doctrine of fraudulent concealment to Section 4B of the Clayton Act, which is found in Moviecolor, is, by the

court's own admission, merely dicta and is not persuasive.[1] American Tobacco Company v. People's Tobacco Company, 204 F. 58 (5th Cir.1913); Crummer Company v. Du Pont, 117 F.Supp. 870 (N.D.Fla.1954); 223 F.2d 38 (5th Cir. 1955); 255 F.2d 425 (5th Cir.1958); Philco Corp. v. Radio Corporation of America, 186 F.Supp. 155 (E.D.Pa. 1960); Norman Tobacco & Candy Co. v. Gillette Safety Razor Corp., 197 F. Supp. 333 (N.D.Ala.1960). Moviecolor, Limited v. Eastman Kodak Co., 288 F.2d 80 (2nd Cir.1961).

**II**

Congress has the power to enact a definitive statute of limitations which is not subject to tolling for any reason whatsoever. Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L. Ed. 743 (1946); Unexcelled Chemical Corp. v. United States, 345 U.S. 59, 64, 73 S.Ct. 580, 97 L.Ed. 821 (1953); Adams v. Albany, 80 F.Supp. 876, 881 (S.D. Cal.1948). Congress in enacting Section 4B of the Clayton Act plainly and unequivocally barred all claims under Section 4 of the Clayton Act filed more than four years after such claims accrued. Inasmuch as the language of Section 4B is plain and unequivocal, there is no need to resort to other aids of statutory construction. Unexcelled Chemical Corp. v. United States, 345 U.S. 59, 64, 73 S.Ct. 580, 97 L.Ed. 821 (1953); Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); United States v. Borin, 209 F.2d 145, 147 (5th Cir.1954), cert. den. 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647 (1956); Adams v. Albany, 80 F.Supp. 876, 881 (S.D.Cal.1948). Conclusive proof that there was to be no implied exception to the bar created by Section 4B is found in the fact that at the same time Congress expressly enacted in Section 5(b) the one exception to the absolute bar contained in Section 4B. Where Congress has used general man-

---

[1]. Had there in fact been a question of limitations in Dovberg v. Dow Chemical Company, 195 F.Supp. 337 (E.D.Pa. 1961), Section 4B of the Clayton Act would have been involved. However, there was no reason to consider the statute of limitations in that case and the court's discussion of the problem must be regarded as dicta.

datory language and has imposed one or more explicit exceptions, the Court has no power to read in an additional exception. Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); Kendall v. United States, 107 U.S. 123, 125, 2 S.Ct. 277, 27 L.Ed. 437 (1883).

### III

Section 4B, being a substantive part of the statute creating a cause of action, extinguishes the cause of action and cannot be tolled except by express legislative authority. The courts have consistently held that where the time for commencing an action is prescribed in the statute which creates the liability and gives the right of action, the time is not extended by reason of fraud or concealment which might work an extension of ordinary statutes of limitations. Pollen v. Ford Instrument Co., 108 F.2d 762 (2nd Cir. 1940); The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886); A. J. Phillips Co. v. Grand Trunk Western Railway Co., 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774 (1915); Scott v. Railroad Retirement Board, 227 F.2d 684 (7th Cir.1955); United States ex rel. Texas Portland Cement Co. v. McCord, 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893 (1914); Leimer v. Woods, 196 F.2d 828 (8th Cir. 1952); United States v. Borin, 209 F. 2d 145 (5th Cir.1954), cert. den. 348 U. S. 821, 75 S.Ct. 33, 99 L.Ed. 647 (1956); Adams v. Albany, 80 F.Supp. 876 (S.D. Cal.1948).

See also, Frazee v. Partney, 314 S.W. 2d 915 (S.Ct.Mo.1958). As long as the statute of limitations is specifically directed at the right created by statute, it is immaterial that the limitations provision may be contained in a different statute or may have been passed subsequent to the enactment of the statute creating the right. Davis v. Mills, 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067 (1904);

Midstate Horticultural Co. v. Pennsylvania R. Co., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96 (1943).

### IV

The legislative history of Section 4B is consistent with the plain meaning of the statutory language. During the six years prior to the enactment of Section 4B in 1955, Congress had before it numerous bills to establish a uniform federal statute of limitations for treble damage antitrust actions. Congress was repeatedly urged to insert a fraudulent concealment exception and held extensive hearings on the advisability of such an exception, but consistently refused to adopt any such proposals. See schedule appearing at pages 16–18 of brief filed by co-defendants. The eleventh-hour colloquy between Congressman Patman and Congressman Celler on the floor of the House (Cong. Rec. Vol. 101, part 5, pp. 5132–33, 84th Cong., 1st Sess. (1955)) cannot be given any weight in view of the consistent refusal of both the House and Senate to include a fraudulent concealment exception. Pennsylvania R. R. Co. v. International Coal Mining Co., 230 U.S. 184, 194, 33 S.Ct. 893, 57 L.Ed. 1446 (1913); Federal Trade Commission v. Anheuser-Busch, Inc., 363 U.S. 536, 80 S.Ct. 1267, 4 L. Ed.2d 1385 (1960); Brown Shoe Co. v. United States, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510.

### V

If the doctrine of fraudulent concealment is read into Section 4B, the Congressional effort to establish a uniform federal statute of limitations to replace the multiple statutory limitations periods resulting from applying state laws will be completely nullified and every conspiracy case will have its own individual statute of limitations. Certainly this is contrary to Congressional intent.