**UNITED STATES v. BORIN.**

No. 14534.

United States Court of Appeals,
Fifth Circuit.

Jan. 5, 1954.

Rehearing Denied March 8, 1954.

Maurice S. Meyer, Atty., Dept. of Justice, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., Frank B. Potter, U. S. Atty., Midland, Tex., Samuel D. Slade, Atty., Dept. of Justice, Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellant.

W. J. Holt, Dallas, Tex., Herman A. Greenberg, Washington, D. C., J. Manuel Hoppenstein, Dallas, Tex., Richard A. Frank, Washington, D. C., Robert L. Clark, Pat Coon, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This action arose from Defense Supplies Corporation's administration of the Livestock Slaughter Subsidy Program, sometimes referred to as the "Meat Subsidy Program", authorized by Section 2 (e) of the Emergency Price Control Act of 1942, 56 Stat. 23, 50 U.S.C.A.Appendix, § 902(e). With the long range view of encouraging the production of livestock for slaughter, subsidy payments were made for the purpose of compensating slaughterers because of the low ceiling prices fixed by meat price regulations of the Office of Price Administration while the purchase prices for livestock paid by the slaughterers to the livestock producers were not reduced proportionately.[1]

The complaint alleged that during the period from June 1, 1943 to June 30, 1946, the defendant operated a slaughterhouse and became eligible for the livestock subsidy payments in accordance with the terms of the applicable statute, directive, and regulations; that compliance with the regulations of the Office of Price Administration was an express condition precedent to entitlement to subsidy payments; that defendant filed claims for meat subsidy for all monthly reporting periods from June 1, 1943 through June 30, 1946; that in each claim defendant certified that he did not willfully violate any regulation of the Office of Price Administration applicable to the sale of beef during the respective period; that each certification and claim was false and fraudulent in that, during each period, the defendant willfully violated Revised Maximum Price Regulation 169, 7 F.R. 10381, of the Office of Price Administration, by obtaining payment for beef in excess of the maximum prices; that, in reliance upon the truth and honesty of the defendant's certifications and in accordance with Section 5 (d) of Defense Supplies Corporation's livestock slaughter payments, Regulation No. 3, 8 F.R. 10826, and Section 7,003.9 (c) (d), of Revised Regulation No. 3, 10 F.R. 4241, providing for tentative payment upon preliminary approval, the subsidy agency paid the defendant's claims upon preliminary approval only and prior to receipt of any evidence of non-compliance with OPA Regulations.

---

1. For a description of the program, see Illinois Packing Co. v. Bowles, Em.App., 147 F.2d 554; Armour & Co. v. Reconstruction Finance Corporation, Em.App., 162 F.2d 918.

"On principle, subsidies would not be payable if the applicant did not in fact buy and sell in accordance with the price regulations and thus undergo the disadvantage which the subsidy was designed to alleviate." United Meat Co. v. Reconstruction Finance Corporation, 85 U.S. App.D.C. 9, 174 F.2d 528, 530.

The complaint prayed that the court declare that the defendant willfully violated Revised Maximum Price Regulation 169 during each monthly reporting period for which he filed subsidy claims, and asked judgment in the total amount of the subsidies paid for the monthly reporting periods during which the violations are found to have occurred, together with interest and costs of suit. Further, the complaint prayed the court to grant judgment under the False Claims Act, R.S. §§ 3490–3494, 31 U.S. C.A. §§ 231–235, in double the amount of the subsidies paid and a forfeiture of $2,000 for each false claim filed.

The grounds of the defendant's motion to dismiss are set forth in the footnote.[2] The District Court sustained the defendant's motion and dismissed the complaint without indicating the ground or grounds upon which it relied, and this appeal followed.

■ The United States had, of course, a right to plead as many separate claims as it possessed, regardless of consistency, Rule 8(e) (2), F.R.C.P., 28 U.S.C.A., and the court should grant the relief to which it is entitled even though not demanded in its pleadings, Rule 54(c), F. R.C.P. The United States insists that the complaint set forth several separate claims upon each of which it was entitled to relief.

The most comprehensive claim is based upon the False Claims Act. One section of that Act, 31 U.S.C.A. § 235, provides: "Limitation of suit. Every such suit shall be commenced within six years from the commission of the act, and not

afterward." All of the claims here involved were filed more than six years before the suit was commenced.

■ The United States contends that the six year period applies only to suits brought by a private prosecutor in the name of the United States. It concedes that a reading of the Congressional debates preceding the passage of the original Act in 1863 indicates the intention that the limitation was to apply to all suits (see Congressional Globe, 37th Cong., 3rd. Session, p. 958); but insists that the Conference Report (II.Rept. 933. 78th Cong., 1st Session, p. 5) having to do with a 1943 amendment to the Act, limiting but not eliminating private suits, shows that the retention of the *qui tam* provision was the sole reason for leaving the time limitation undisturbed. We do not agree. To the contrary, we think that the terms of the Act are so plain and unambiguous as to make resort to legislative history unnecessary; and, further, that, if such history is referred to from the inception of the statute, it confirms the view that the section means what it says and applies to every suit under the Act.

■ The United States makes an alternative contention that the six year limitation does not begin to run until after discovery of the fraud, citing Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743. The section is explicit in commanding that every such suit be commenced within six years from the commission of the act, *and not afterward*. This emphatic language must have been employed with full recognition of the fact that in most

---

2. "Want of Jurisdiction
"I. Under Rules 9(f) and 12(b)(1), Rules of Civil Procedure, the Court lacks jurisdiction because it affirmatively appears on the face of the complaint that the action has not been brought within the time prescribed by the provisions of the applicable Statutes of Limitations.
"Failure to State a Claim
"II. Under Rule 12(b) (6), Rules of Civil Procedure, because the complaint fails to state a claim against defendant upon which relief can be granted in that:

"(1) The complaint sets forth certain statutes, regulations and directives which prescribe the conditions under which meat subsidy claims may be invalidated, and it does not appear that such conditions have been met by plaintiff; and
"(2) It appears that the action is barred by the limitations provisions of the applicable statutes (and particularly, 31 U.S.C.A. Section 235).
"(3) It does not state a claim for declaratory relief as authorized by law."

cases the falsity of the claim would remain concealed for a long time. The intention seems clear that the time would not be extended on account of any fraud or concealment. See Phillips v. Grand Trunk Western R. Co., 236 U.S. 662, 667, 35 S.Ct. 444, 59 L.Ed. 774; United States ex rel. Nitkey v. Dawes, 7 Cir., 151 F.2d 639; Damiano v. Pennsylvania R. Co., 3 Cir., 161 F.2d 534; Annotation, 15 A.L.R.2d 500; cf. Grossman v. Young, D.C.S.D.N.Y., 72 F.Supp. 375. We conclude that the claim based upon the False Claims Act was properly dismissed.

The claim seeking simple restitution of the amount of the meat subsidy payments made to the defendant by the Reconstruction Finance Corporation and its subsidiary, Defense Supplies Corporation, was based upon two theories: one, that such restitution was authorized by the Emergency Price Control Act and implementing directive; and, two, that irrespective of statute, the United States had a right to recover for common law fraud.

■■ Without elaborating upon the terms of the Act and implementing directive, we think it sufficient at this time to say that we agree that payments made on invalid claims can be recaptured, and that the invalidity of the claim may be established in the action brought to recapture such payments. United Meat Co. v. Reconstruction Finance Corp., 85 U.S.App.D.C. 9, 174 F.2d 528, 530; cf. San Antonio Packing Co. v. Reconstruction Finance Corporation, Em.App., 182 F.2d 614. The time within which illegally paid subsidies may be recovered is not limited by statute. See Taylor & Richards v. Reconstruction Finance Corporation, Em.App., 193 F.2d 877.

■ Finally, the United States insists that, under the averments of the complaint, the defendant has been guilty of common law fraud in getting the subsidies and that the remedy for common law fraud is always available. The appellee contends that the False Claims Act was intended to afford the exclusive remedy. The First Circuit has held to the contrary. Pooler v. United States, 5 Cir., 127 F. 519, and we agree with the observation of the Third Circuit in United States v. Silliman, 3 Cir., 167 F.2d 607, 611, that there is no reason "for concluding that because a statute enlarged the liability of the defendant it abrogated the right which the sovereign otherwise has to pursue common law remedies against tort-feasors in its own courts." It is well settled that no statute is necessary to authorize the United States to recover funds, the illegal payment of which was induced by fraud. Pooler v. United States, supra; United States v. Silliman, supra; Isenberg v. Biddle, 75 U.S.App.D.C. 100, 125 F.2d 741, 744.

■ The appellee makes an alternative contention that any claim for the recovery of the subsidy payments belongs to the Reconstruction Finance Corporation and that that Corporation is subject to the ordinary state statutes of limitations. It is clear that the Reconstruction Finance Corporation and its subsidiary, Defense Supplies Corporation, were acting in the payment of the subsidies as mere agencies of the Government to accomplish purely Governmental purposes. The funds were Government funds and the loss was the Government's loss. See Cherry Cotton Mills, Inc. v. United States, 327 U.S. 536, 539, 540, 66 S.Ct. 729, 90 L.Ed. 835; Inland Waterways Corporation v. Young, 309 U.S. 517, 524, 60 S.Ct. 646, 84 L.Ed. 901; Defense Supplies Corporation v. United States Lines Co., 2 Cir., 148 F.2d 311, 312.

■ It is true that the Third Circuit has recently held that the Reconstruction Finance Corporation is subject to be sued for unpaid meat subsidy claims. Riverview Packing Co. v. Reconstruction Finance Corporation, 3 Cir., 207 F.2d 361. However, because sovereign immunity to suit has been waived in such an action, it does not follow that the United States is subject to state statutes of limitations in suits arising from the claims of the Reconstruction Finance Corporation.

Though a Governmental corporation may be sued, it may not otherwise be subject to limitations applicable to private corporations. United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L. Ed. 1283; U. S. Shipping Board Emergency Fleet Corporation v. Western Union Telegraph Co., 275 U.S. 415, 423, 48 S.Ct. 198, 72 L.Ed. 345. The opinion in the Riverview Packing Co. case has no bearing, we think, upon suits by the United States based on claims arising from the Reconstruction Finance Corporation's administration of the subsidy program.

The District Court erred in dismissing the complaint insofar as it sought to recover the total amount of the subsidies paid for the monthly reporting periods during which willful violations of the Maximum Price Regulation are found to have occurred. The judgment is therefore

Reversed.