**UNITED STATES of America, Plaintiff,**

v.

**George UZZELL and Vernon Uzzell, Defendants.**

**Civ. A. No. 85–1834.**

United States District Court, District of Columbia.

Nov. 26, 1986.

Michael F. Hertz, Robert L. Ashbaugh, Joan E. Hartman, Civil Div., Dept. of Justice, Washington, D.C., for plaintiff.

Stuart L. Nachman, Norfolk, Va., Frank W. Dunham, Jr., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

On March 4, 1986, plaintiff United States moved this Court for "partial" summary judgment[1] on the issues of liability and damages under the False Claims Act, 31 U.S.C. §§ 3729–3731.

Federal Rule of Civil Procedure 56(c) directs that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court recently empha-

sized that summary judgment is warranted when there is "no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 2511 (citations omitted).

## Discussion

### I. *Collateral Estoppel Effect of the Criminal Conviction*

The primary issue to be decided in determining whether there is a genuine issue of material fact with regard to the False Claims Act cause of action is whether the criminal conspiracy conviction of defendants George Uzzell and Vernon Uzzell under 18 U.S.C. § 286 is conclusive evidence in a civil case as to the necessary elements of a violation of 31 U.S.C. § 3729.

■ To establish civil liability under section 3729, the government must establish that defendants knowingly presented false, fictitious, or fraudulent claims upon the United States Government. *See United States v. Lawson,* 522 F.Supp. 746, 750 (D.N.J.1981). Essentially, the same elements (in addition to conspiracy) must be proved by the government to obtain a criminal conviction for filing false claims under 18 U.S.C. § 286.

■ A criminal conviction is conclusive proof and operates as an estoppel on defendants as to the facts supporting the conviction in a subsequent civil action. *Local 167 of International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America v. United States,* 291

---

**1.** Throughout its pleadings, the government has referenced its request as a motion for "partial" summary judgment, and it has been granted as such. Nonetheless, the granting of summary judgment this date on the government's alternative Claims 1 and 2 removes the necessity to pursue the remaining Claims 3 and 4. Claim 3, that Genco never repaid the SBA, was already the subject of a default judgment by the District

Court of Maryland for the United States. *United States v. Scotco, Inc., t/a Genco Tool and Engineering Co.,* Civ. No. H–82–1076 (D.Md. Nov. 3, 1982) (for the amount of $660,331.00 plus interest, the total advance payments from the SBA to Genco, part of which ($317,510.62) was disbursed to Martec). Claim 4 for unjust enrichment, as discussed herein, is irrelevant in light of this judgment.

U.S. 293, 298–99, 54 S.Ct. 396, 398–99, 78 L.Ed. 804 (1934); *Brown v. United States,* 524 F.2d 693, 705, 207 Ct.Cl. 768 (1975). To apply the principle of estoppel, however, the trial court in the subsequent civil proceeding must examine the record to determine exactly what was decided in the criminal proceeding. *Emich Motors Corp. v. General Motors,* 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951). Estoppel extends only to questions "directly put in issue and directly determined" in the criminal prosecution. *Id.* at 569, 71 S.Ct. at 414; *Brown* 524 F.2d at 705. The difficult problem, as recognized by the *Emich* Court, is discerning what matters were adjudicated in the antecedent suit. In aid of its determination, the trial court must look to the record, the pleadings, the evidence submitted, the jury instructions, and any opinions of the courts. *Emich Motors* 340 U.S. at 569, 71 S.Ct. at 414.

■ In the instant case, determining the scope of the prior criminal conviction of the defendants is not a difficult task. The indictment, the transcript of the criminal trial, the jury verdict, and the affirmation of the conviction by the Fourth Circuit Court of Appeals make clear that defendants are estopped from now denying their liability under the False Claims Act, 31 U.S.C. § 3729–3731.

On October 30, 1983, George Uzzell and Vernon Uzzell were indicted on seven counts of criminal conspiracy to defraud the United States Government by filing false claims under the "8(a)" program of the Small Business Administration (SBA), a program through which the SBA provides loans to small businesses owned by socially and economically disadvantaged individuals. 15 U.S.C. § 637(a).

Count 1 of the indictment alleged that defendants conspired to defraud the government by filing false claims (18 U.S.C. § 286); Counts 2 through 4 charged defendants with filing false claims as individuals (18 U.S.C. § 287); and Counts 5 through 7 charged them with filing false claims specifically with the SBA (15 U.S.C. § 645).

Count 1 is a comprehensive charge and lists the specific activities comprising the conspiracy charge as well as thirty-nine "overt acts" underlying the charge. Count 1 of the indictment charged, *inter alia,* that:

■ ... George Uzzell and Vernon Uzzell did combine, conspire, confederate and agreee [sic] with each other to knowingly defraud the United States and the Small Business Administration by obtaining and aiding to obtain the payment and allowance of false, fictitious, and fraudulent claims.

13. It was a part of the said conspiracy that the co-conspirators would and did submit to SBA claims against the advance funds for work allegedly performed for Genco by Martec. The claims would be accompanied by Martec invoices which fraudulently alleged that Martec had performed and was going to perform work for Genco. In fact, Martec performed little or no work for Genco.

14. It was part of the said conspiracy that Martec invoices were presented to SBA by Genco for work performed by Genco employees. The conspirators would present claims for the work by the Genco employees to SBA, and Genco would be reimbursed.

15. It was part of the said conspiracy that the conspirators would and did present Martec invoices for work performed by other legitimate contractors, and paid out of the SBA advance account.

16. It was a part of the said conspiracy that the conspirators would not reimburse the SBA for advanced funds after payment by the contracting agency.

17. It was a part of the said conspiracy that the conspirators would and did use the funds obtained from SBA through Martec for their own gain.

The thirty-nine "overt acts" included in Count 1 consist of a list of the specific financial transactions at issue, including: the four claims by Martec to the advanced payment account on August 14, 1978 ($30,-000), November 20, 1978 ($158,755.00),

June 5, 1979 ($100,375.44), and September 27, 1979 ($58,380.68), and the disbursements by Martec. Chief District Judge Kaufman, presiding at the defendants' criminal trial, dismissed Counts 2 through 7 on the ground of improper venue. *United States v. George Uzzell and Vernon Uzzell,* Cr. No. K83–00421 (D.Md.1984).

Judge Kaufman sentenced the defendants to six months' work release, five years' probation, 200 hours of community service, and restitution in an amount to be determined through civil litigation. The convictions were affirmed by the Fourth Circuit Court of Appeals. *United States v. Uzzell,* 780 F.2d 1143 (4th Cir.1986). The Court of Appeals concluded that there was more than sufficient evidence presented to convict both defendants of the conspiracy. Defendants had challenged, as they continue to dispute, the sufficiency of the evidence implicating Vernon Uzzell's participation in the conspiracy. The Court of Appeals concluded that "[f]ar from being insufficient, the showing of Vernon's participation seems *overwhelming....* There was *more than an abundant basis* for finding that Vernon was a knowing participant in the fraudulent scheme." *Id.* at 1146 (emphasis added).

Defendants argue that the record is unclear as to the scope of the matters encompassed in the criminal conviction. They argue that the jury's conviction on Count 1 may have been based only on the first overt act,[2] and that defendants' guilt as to the other thirty-eight acts alleged to constitute the defendants' fraudulent scheme was not conclusively established by the verdict.

The "first overt act" referred to by defendants as the possible sole basis for the conspiracy conviction is not at issue in this case, but most importantly, the criminal trial record reflects it was peripheral in that trial as well. The government's case clearly focuses on the three other claims made on November 20, 1978, June 5, 1979,

and September 27, 1979, for a total of $317,510.62 in disbursements.

Defendants' argument that the verdict may rest on only the first overt act is without merit. The jury returned a guilty verdict on Count 1, and nothing in the record indicates that anything less than all of the specific acts alleged in the count were determined by the jury in reaching that verdict. Furthermore, the Fourth Circuit Court of Appeals' opinion discussed the entire fraudulent scheme, specifically noted the disbursements to Martec, and found the evidence of conspiracy "overwhelming," not based merely on the first overt act.

Defendants cite *DeCavalcante v. Commissioner of Internal Revenue,* 620 F.2d 23 (3d Cir.1980), in support of their argument that the collateral estoppel effect of the convictions should be narrowly construed. *DeCavalcante* suggests, however, that although a guilty plea by itself would not be sufficient to prove the elements for the civil charge, the admissions made by the defendant in his Rule 11 proceeding "broadened the collateral estoppel effect of the guilty plea." *Id.* at 26 n. 9. Similarly, in the instant case, the facts revealed and admissions made in the criminal trial supplement the jury's verdict of conspiracy as matters for this Court to consider in determining the scope of collateral estoppel. An affidavit or a certified transcript of prior testimony may provide the basis for summary judgment. *International Distributing Corp. v. American District Telegraph Co.,* 569 F.2d 136, 138 (D.C.Cir.1977).

Defendants fail to provide specific arguments refuting the collateral estoppel effect of the criminal conviction. They make mere allegations and denials, and then assert that they are "entitled to their day in court." This Court declines defendants' invitation to re-try their criminal convictions in this civil proceeding. Such a reexamination of the specific facts underlying the fraudulent scheme is neither appropriate

---

**2.** The "first overt act" involved a Genco claim for $30,000 submitted on August 14, 1978 to the

advance payment account.

nor warranted. Defendants already have had a full opportunity for review of the criminal proceeding by the Fourth Circuit Court of Appeals. The criminal conviction, the trial transcript, and that Fourth Circuit decision demonstrate that there is no genuine issue of material fact regarding defendants' liability under 31 U.S.C. § 3729. The liability of the defendants has been conclusively established.

## II. *The False Claims Act Statute of Limitations*

■ In their answer to the complaint, defendants deny liability for two of the three requests for disbursements from the SBA on the basis that the six-year statute of limitations had run to those parts of the government's claim. Plaintiff requests summary judgment on this issue.

The False Claims Act provides that the government must bring suit for false claims "within 6 years from the date the violation is committed." 31 U.S.C. § 3731. The government brought its case against the Uzzells on June 5, 1985, more than six years after the defendants filed their first disbursement request on November 20, 1978, and six years after the second disbursement request on June 5, 1979.[3] (On November 20, 1978, George Uzzell submitted a claim to the SBA for a release of funds from the advance payment account in the amount of $158,755.50. On June 5, 1979, George Uzzell submitted a similar claim for $100,374.44. The third claim, for $58,380.68, was made on September 27, 1979. Defendants do not challenge that the government's cause of action for this latter 1979 claim is clearly within the statute of limitations.)

The government contends, however, that the SBA did not discover the falsity of the disbursement requests and the defendants' subsequent violation of the False Claims Act until 1981, when the SBA began an audit of Genco after the defendants failed to reimburse the SBA for the advance payments.

The important question before this Court is whether the "almost universal" principle of equitable tolling applies to the False Claims Act statute of limitations, 31 U.S.C. § 3731(b), as amended in 1982, Pub.L. 97–258.[4] An older line of cases strictly interpreted the statutory period in section 3731, holding that equitable tolling did not apply. Subsequent decisions by the Supreme Court, however, reject this reasoning and suggest that the statute of limitations of section 3731 should be subject to principles of equitable tolling.

In 1954, the Fifth Circuit Court of Appeals held in *United States v. Borin*, 209 F.2d 145, 147–48, *cert. denied*, 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647 (1954), that the specific language of section 235 (predecessor to section 3731(b), as amended), commanded that the six-year statute of limitations not be extended for fraud or concealment.[5] The *Borin* court specifically relied on *A.J. Phillips Co. v. Grand Trunk Western Ry. Co.*, 236 U.S. 662, 667, 35 S.Ct. 444,

---

**3.** Although the Court's opinion on this issue vitiates the dispute over whether the two claims are barred, it is unclear why the government seems to admit that the June 5, 1979 claim would be barred even under the defendants' narrow interpretation of section 3731. The government brought its suit on June 5, 1985, exactly six years after the violation, and thus presumably just within the statutory period on that claim.

**4.** Defendants contend that the six-year language of section 3731(b) is "jurisdictional." In 1959, the Supreme Court reviewed the line of cases espousing this position and rejected such an interpretation as dicta. *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 234 n. 11 and 235, 79 S.Ct. 760, 763 n. 11 and 763, 3

L.Ed.2d 770 (1959). *See also Zipes v. Trans-World Airlines*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (setting forth the applicable framework for determining whether a time period is a limitations period or jurisdictional).

**5.** The *Borin* court noted that: "The section is explicit in commanding that every such suit be commenced within six years from the commission of the act, *and not afterward.* This emphatic language must have been employed in full recognition of the fact that in most cases the falsity of the claim would remain concealed for a long time." *Borin*, 209 F.2d at 147–48 (emphasis in original). In 1982, Congress eliminated the specific language relied on by the *Borin* court in its finding that the equitable tolling rule did not apply to section 235.

446, 59 L.Ed. 774 (1915), in its conclusion that the time under the False Claims Act could not be extended on account of any fraud or concealment. 209 F.2d at 147–48. This reasoning has since been repudiated by the Supreme Court. *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 234 n. 11, 79 S.Ct. 760, 763 n. 11, 3 L.Ed.2d 770 (1959) (rejecting analysis in *A.J. Phillips,* 236 U.S. at 662–68, 35 S.Ct. at 444–46, and its progeny as "dicta and ... neither binding nor persuasive"), *affirmed American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 559, 94 S.Ct. 756, 769, 38 L.Ed.2d 713 (1974).

The Supreme Court has emphasized that the proper test to use in determining whether equitable principles apply to an express statute of limitations is "whether tolling the limitation in a given context is consonant with the legislative scheme." *American Pipe,* 414 U.S. at 558, 94 S.Ct. at 768. The Court noted that "in cases where the plaintiff has refrained from commencing suit during the period of limitation because ... of fraudulent concealment ... this Court has not hesitated to find the statutory period tolled or suspended by the conduct of defendant." *American Pipe* at 559, 94 S.Ct. at 769 (citations omitted). The Court concluded: "the mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative scheme." *Id.*

In light of the Supreme Court's mandate to apply equitable principles to federal statutes of limitation, and the Court's previous rejection of the more restrictive analysis of the *Borin* and *A.J. Phillips* decisions, and finally that "[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government," *Badaracco v. Commissioner of Internal Revenue,* 464 U.S. 386, 390, 104 S.Ct. 756, 760, 78 L.Ed.2d 549 (1984), this Court concludes that the principles of equitable tolling apply to 31 U.S.C. § 3731. This construction of the statute is consonant with the intent of Congress in enacting the False Claims Act, *i.e.,* to provide the government with an effective tool for recovering monies from claimants who defraud the United States. It would be anomalous and inconsistent with the legislative scheme to allow defendants to avoid liability merely by further concealment of their wrongdoing beyond the six-year period in which the government must bring its suit.

The rule of equitable tolling allows the statutory period to begin running after the government has discovered the fraud, rather than from the date of the violation itself. The term "discovered," of course, assumes due diligence on the part of the party charged with the responsibility of uncovering the fraud.

Defendants express the concern that this discovery rule would allow the government to bring an action "whenever it had the inclination" to discover the material facts. The due diligence requirement, however, mitigates this concern. *Richards v. Mileski,* 662 F.2d 65, 71 (D.C.Cir.1981). Similarly, the Court rejects plaintiff's alternative suggestion that the period necessarily begins to run from the date the injury was suffered (here, when defendant defaulted on their loan obligation). Plaintiff also suggests in its reply that the statute of limitations should have begun to run only after the grand jury indictment was made public. Although these occasions may have been when the United States first discovered the fraud, it is the discovery of the violation, not necessarily the indictment or the injury itself, that is determinative in the equitable tolling of the statute of limitations. This Circuit has recently reaffirmed the principle that: "Read into every statute of limitations ... is the equitable doctrine that in the case of defendant's fraud or deliberate concealment of material facts relating to his wrong-doing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit." *Hohri v. United States,* 782 F.2d 227, 246

(D.C.Cir.1986) (approving *Fitzgerald v. Seamans*, 553 F.2d 220, 228 (D.C.Cir.1977)).

Thus, in this case, the statutory period began to run in 1981 when the United States discovered the violations of the False Claims Act, rather than in 1978, and 1979, when those violations occurred. Therefore, the United States' claims as to the transactions in 1978 and 1979 are timely and not barred under the six-year statute of limitations of 31 U.S.C. § 3731.

### III. *Joint and Several Liability of Defendants*

■ There is no genuine issue of material fact regarding the joint and several liability of the defendants. Where "the criminal proceedings conclusively establish that each of the convicted defendants participated in the conspiracy at some point, each is clearly *liable* under the [False Claims] Act for both the forfeiture and damages." *United States v. Kates*, 419 F.Supp. 846, 854 (E.D.Pa.1976) (emphasis in original). Despite a continuing effort by defendants to argue that the liability of George Uzzell and Vernon Uzzell differs, the trial court and the Fourth Circuit Court of Appeals clearly found both of the defendants to be jointly and severally liable. Accordingly, defendants are estopped from denying their joint and several liability for the claims of the United States in the instant case.

Because defendants are jointly and severally liable under sections 3729, 3730, and 3731, it is therefore unnecessary to address the government's common law theory of liability based on mistake and unjust enrichment.

### IV. *Damages*

■ On the basis of the criminal trial record and the admissions and answers of the defendants, the government claims that its damages are the total amount of funds obtained by defendants from the SBA on the basis of the Martec quotation and invoices—$317,510.62. Under section 3729 of the False Claims Act, defendants are liable for twice the amount of the government's damages. Plaintiff is also allowed post-judgment interest under 28 U.S.C. § 1961.[6] Finally, defendants are subject to a civil penalty of $2,000 for the conspiracy and $2,000 for each of the three false loan applications. 31 U.S.C. § 3729. In its motion for partial summary judgment, the government requested damages of only $550,021.24. This claim was based on the belief that the wife of one of the defendants had paid into the registry of the District Court of Maryland (the criminal trial court) an amount of $93,000 as restitution. Defendants admit, however, that this amount has never been paid, and has since been "dissipated." The total claim is, therefore, for $643,021.24.

The defendants assert that Martec "returned" to Scotco part of the disbursements for use in the contract work. Their argument, however, does not in any way deny the United States' specific claims to damages for at least the full amount that defendants received from the SBA. It is undisputed that none of the money disbursed to Martec or Genco was used to fulfill the defendants' contractual obligation to make tow modification kits for the United States Army. And, defendants admit that none of the advance payment funds obtained from the SBA were ever repaid. Any claim by defendants that some of the funds disbursed to Martec and then rerouted to Genco may have been used for fulfillment of the tow modification contract is not asserted with sufficient specificity to survive summary judgment. Even were it a colorable claim, it would be irrelevant to the issue of damages under the False Claims Act. Defendants' liability arises from the submission of false documents to the SBA, the SBA's reliance on these false documents in disbursing ad-

---

6. The government cannot, however, collect pre-judgment interest. *United States v. McLeod,* 721 F.2d 282 (9th Cir.1983) (agreeing with Second Circuit that pre-judgment interest in addition to double damages and penalties is not required to fulfill Congress' intent under the False Claims Act).

vance funds to defendants, and that the loans were never repaid. Defendants' conclusory denial and assertion that a different measure of damages is appropriate shows only the faintest shade of refutation and does not rise to the level of a colorable issue, which is required to deny summary judgment.

### V. *Relief*

■ The government requests certain equitable relief to aid it in pursuing the judgment requested, including the declaration of a constructive trust on defendants' property that can be traced to the SBA disbursement. This extreme request appears unwarranted at this time, but in no way does this ruling preclude the government from pursuing for execution, in its usual and customary manner, the hereinafter judgment which should produce the results sought.

Accordingly, summary judgment for the plaintiff United States and against defendants George Uzzell and Vernon Uzzell, jointly and severally, for the amount of $643,021.24 (plus postjudgment interest) under 31 U.S.C. § 3729 shall be entered by separate judgment filed contemporaneously.

SO ORDERED.