**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 7, 2012

No. 11-10594

Lyle W. Cayce
Clerk

SECURITIES AND EXCHANGE COMMISSION

Plaintiff-Appellant

v.

DOUGLAS J. BARTEK; NANCY A. RICHARDSON

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant, United States Securities and Exchange Commission
("SEC" or the "Commission"), brought this action against Defendants-Appellees,
Douglas J. Bartek ("Bartek"), and Nancy A. Richardson ("Richardson,"
collectively the "Defendants") for alleged violations of securities laws and
regulations stemming from an options backdating scheme which occurred
between 2000-2003.  In addition to civil penalties, plaintiff also sought
permanent injunctions and officer and director bars against the defendants.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-10594

Defendants' motion for summary judgment was granted when the district court determined that the statute of limitations had run on the plaintiff's asserted claims.  The Plaintiff now appeals that decision.  For the reasons stated herein, we AFFIRM.

## I. Factual and Procedural Background

The company Microtune was co-founded by Bartek in 1996.  Microtune developed silicon tuners to be used in media applications.  By early 2000, Microtune was beginning preparation for a public offering.  At the time Bartek was Chief Executive Officer and Richardson was Chief Financial Officer and General Counsel.  The SEC alleges that from 2000 to 2003, the Defendants improperly backdated stock options that the company granted to newly hired and existing employees and executives.  Allegedly, Microtune failed to properly expense those options and Bartek allegedly selected grant dates using a two-week look-back procedure to find and use dates of the lowest stock price as the supposed option grant date.  Bartek and Richardson backdated grants to newly hired executives and employees; backdated large "block" grants to officers and rank-and-file employees; and granted backdated options, cancelling those options when the company's stock price dropped, and subsequently regranted the same options at a lower exercise price.

The SEC filed its original Complaint on June 30, 2008.  It alleged that Microtune, Bartek, and Richardson had violated both the antifraud and books and records provisions of the federal securities statutes and related SEC regulations through a stock option backdating scheme.[1]  The SEC alleged that the Defendants committed fraud.  In its First Amended Complaint, the SEC alleged that Bartek and Richardson violated: 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Sections 10(b), 13(b)(5), and 14(a) of the Exchange Act [15

---

[1] Microtune settled shortly after the Complaint was filed.

No. 11-10594

U.S.C. §§ 78j(b), 78m(b)(5) and 78n(a)], and Exchange Act Rules 10b-5, 13a-14, 13b2-1, 13b2-2, and 14a-9 [17 C.F.R. §§ 240.10b-5, 240.13a-14, 240.13b2-1, 240.13b2-2, and 240.14a-9].  The Defendants allegedly aided and abetted Microtune's violations of Sections 13(a), 13(b)(2)(A), 13(b)(2)(B), and 14(a) of the Exchange Act [15 U.S.C. §§ 78m(a), 78(m)(b)(2)(A), 78(m)(b)(2)(B), and 78n(a)] and Exchange Act Rules 12b-20, 13a-1, 13a-13, and 14a-9 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13, and 240.14a-9].

The parties filed cross-motions for summary judgment on various issues including a statute of limitations defense, which is the crux of the appeal here. The district court granted summary judgment to the Defendants on statute of limitations grounds.  It also rejected the SEC's fraudulent concealment and equitable tolling claims.[2]  The court also denied the remedies sought by the SEC for the alleged violations.  The sought-after relief included: permanent injunctions, civil penalties, and officer / director bars ("O/D bars").  All forms of relief were found to be penalties under §2462, and thus subject to its time limitations.

## II. Standard of Review

"Our review of the district court's ruling on the cross-motions for summary judgment is de novo." *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 228 n.1 (5th Cir. 2006) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists

---

[2] The court found that the alleged fraud contained no self-concealing conduct.  The equitable tolling argument was denied because the SEC failed to diligently pursue its claims.  The SEC does not appeal the district court's determination that § 2462 is not tolled based on the equitable claim of fraudulent concealment.

No. 11-10594

and the moving party is entitled to judgment as a matter of law." *Lincoln Gen. Ins. Co., v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III. Discussion

#### A. The Application of the Discovery Rule to 28 U.S.C. § 2462

According to the SEC, the alleged backdating scheme resulted in Microtune's failure to record and report over $22.5 million of gross compensation expenses, thus understating expenses and overstating income in various filings made with the Commission. The Defendants point out that the Accounting Principles Board Opinion No. 25 ("APB 25"), which governed the accounting for stock-based compensation, did not clearly show how to treat backdating practices, such as Microtune's, at the time. The statute of limitations at issue is codified in 28 U.S.C. § 2462 and states:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462. In an oral ruling, the court held that the Commission's claims first accrued when the alleged violation occurred, not when the SEC alleges that it discovered the violation. Thus, the court rejected the SEC's argument that the discovery rule applies.

The SEC maintains that it did not have notice of the grant options backdating practice until its 2003 investigation of revenue recognition practices at Microtune. Contrastingly, Bartek contends that the SEC should have discovered the backdating practice during the SEC's staff review of Microtune's registration statement in connection with the company's initial public offering in May 2000. According to the SEC, it first learned of the practice in August

No. 11-10594

2003 when it received a particular email.  In response to a subpoena, the SEC received Bartek's July 26, 2001 email, which discusses backdated option grants ("tricks on timing email").[3]  The Defendants claim that the company's option granting procedure was never hidden and was approved by the company board after consultation with outside counsel and accountants.  Thus, the SEC should have discovered the backdating practice in 2000, after the SEC reviewed and identified a significant problem with Microtune's stock option accounting. Defendants contend that the SEC never inquired further into Microtune's backdating process in 2000.  Had it done so, they allege, the SEC would have found that many options in this case had been selected with hindsight.

The parties dispute whether the discovery rule applies.  The SEC argues that the discovery rule applies to § 2462 for fraud cases and the five-year limitations for civil penalties began to run in 2003, when the SEC discovered the fraud.  The district court determined that the fraudulent concealment or equitable tolling claims are without merit under these facts.  As mentioned earlier, the SEC abandoned its fraudulent concealment and equitable tolling claims on appeal but maintains that the Defendants are guilty of fraud.  We discuss fraudulent concealment and equitable tolling hereinbelow because the SEC cites to cases employing these doctrines to support their position that the discovery rule is applicable.

When interpreting § 2462, we must first resort to a plain reading of the statutory language.  *United States v. Pruett*, 681 F.3d 232, 242 (5th Cir. 2012) (citation omitted); *see also Safety Nat. Cas. Corp. v. Certain Underwriters At*

---

[3] "Per our discussion at the salary reviews, we are putting option grants in for [names of employees deleted]…You should get the details on vesting so that you can communicate to each of the grantees their new grants. They will be pleased with the price. Barbara pulled some tricks on timing, and we are documenting that this grant was done on May 2, and therefore the closing price on May 1 is the option price: $12.35. So, they're already almost $8 in the money!!"

*Lloyd's, London*, 587 F.3d 714, 718 n.9 (5th Cir. 2009) (citation omitted). A plain reading of § 2462 reveals no discovery rule exception. Congress specified the exceptions it wanted to adopt by stating at the beginning of the statute: "Except as otherwise provided by Act of Congress..." § 2462. Nothing else has been provided by Congress in this particular statute except one condition: "if...the offender or the property is found within the United States in order that proper service be made thereon." *Id*. Thus, §2462 provides that a tolling limitation is applicable if the defendant is outside of the United States, precluding service of process. Congress did not include language to toll the statute based on an accrual discovery rule. "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc*. 447 U.S. 102, 108 (1980).

We have held that the discovery rule does not apply to this statute. In *United States v. Core Labs., Inc.,* we analyzed and interpreted § 2462 in a non-fraud action, where the government sought civil penalties for violation of the Export Administration Act. 759 F.2d 480 (5th Cir. 1985). The principal issue there was whether § 2462's five-year limitations began to run at the end of the alleged violation or at the conclusion of the administrative proceedings. *Core* examined § 2462's language, "the date when the claim first accrued." *Id*. at 481. Upon reviewing the history of the statute and the "respectable body of decisional law," we held that case law "clearly demonstrates that the date of the underlying violation has been accepted without question as the date when the claim first accrued, and therefore, as the date on which the statute began to run." *Id*. at 482 (citing supporting cases). *Core* concluded, "[i]t is abundantly clear that both the courts and Congress have construed the 'first accrual' language of § 2462 to mean the date of the violation." *Id*. Other circuits have similarly held that § 2462 does not incorporate a discovery rule. *See  3M Co. (Minn. Mining and Mfg.) v. Browner,*  17 F.3d 1453 (D.C. Cir. 1994); *see also Trawinski v. United Techs*.,

No. 11-10594

313 F.3d 1295, 1298 (11th Cir. 2002); *Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996).

*3M* examined the historical context of the "accrued" language and looked at the term as it first appeared in the 1839 version of the statute. 17 F.3d at 1462. The statute was later codified in 28 U.S.C. § 791 (1911) and slightly modified in the 1948 version to read as it does today. *Id.* The *3M* court asserted that, "when Congress used the word 'accrued,' it could not possibly have intended the word to incorporate any discovery of violation rule." *Id.* (citing Supreme Court cases of the era (1839) to assert that the Court consistently used the phrase "claim accrued" to mean the time where a cause of action first came into existence, not when the violation was first discovered). Indeed, the Supreme Court has held that the general meaning of when a right "accrues" is when that claim "comes into existence." *See United States v. Lindsay*, 346 U.S. 568, 569 (1954) (examining the accrual language of the Commodity Credit Corporation Act and determining that the normal meaning of "accrued" is when a claim comes into existence.). "Th[e] discovery rule, which might be applicable to statutes of limitations in state tort actions, has no place in a proceeding to enforce a civil penalty under a federal statute. The statute of limitations begins with the violation itself-it is upon violation, and not upon discovery of harm, that the claim is complete and the clock is ticking." *Trawinski*, 313 F.3d at 1298 (applying § 2462 and finding that plaintiff's EPCA violation occurred at the time the heating and air conditioning system was installed, not when plaintiff discovered the violation) (citation omitted); *Williams*, 104 F.3d at 240 (agreeing with the D.C. Circuit that the accrual discovery rule does not apply to the running of limitations periods under § 2462).

The Commission's reliance on the following cases is misplaced. The SEC relies on cases such as *Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010), *S.E.C. v. Koenig*, 557 F.3d 736 (7th Cir. 2009), and *S.E.C. v. Gabelli*, 653 F.3d 49 (2d

Cir. 2011) to argue that the courts have applied the discovery rule to fraud cases for centuries. The Supreme Court in *Merck* made no mention of § 2462. At issue there was 28 U.S.C. § 1658(b)(1). In discussing the discovery rule of § 1658(b)(1), the Court explained that the rule delays the accrual of a cause of action until the plaintiff has "discovered" it. *Merck,* 130 S. Ct. at 1793. The relevant statute in *Merck* contains a discovery rule. *See* 28 U.S.C. § 1658(b)(1). The Court did not examine the "first accrued" language, which is found in § 2462. "Cases dealing with other limitations statutes are of extremely limited value." *Core Labs.*, 759 F.2d at 481 (citing *Crown Coat Front Co. v. United States*, 386 U.S. 503, 517 (1967)). Further, *Merck* cites to cases applying equitable principles. *See* 130 S. Ct. at 1794 (citing *Bailey v. Glover*, 88 U.S. 342, 349-50 (1874);[4] *Holmberg v. Armbrecht,* 327 U.S. 392, 397 (1946));[5] *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) (explaining *Bailey* and *Holmberg* as applying "the equitable tolling doctrine")*; 3M*, 17 F.3d at 1461 n.15. *Bailey* was a suit at equity where defendants kept secrets and concealed their fraudulent actions. 88 U.S. at 348. No such conduct concealing fraud was found in the instant case.[6] *Koenig* determined that it did not need to decide when a

---

[4] In discussing the fraudulent concealment principle in the context of a bankruptcy statute, the court asserted: "[W]e hold that when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing, or those in privity with him." 88 U.S. at 349-50.

[5] "Equity will not lend itself to such fraud and historically has relieved from it….[T]his Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" 327 U.S. at 397 (citing *Bailey*, 88 U.S. at 348). "This equitable doctrine is read into every federal statute of limitation." *Id*.

[6] "The SEC has failed to establish that the 'very essence' of the defendants' backdating scheme itself prevented its discovery. Accordingly, the Court finds that, as a matter of law,

"claim accrues under § 2462 because "the nineteenth century recognized a special rule for fraud, a concealed wrong." *Koenig*, 557 F.3d at 739 (citing *Bailey,* 88 U.S. 342; *Holmberg*, 327 U.S. 392). The "special rule" *Koenig* refers to is fraudulent concealment as it relates to equitable tolling. *Id.* Notably, *Koenig* correctly asserted that the Supreme Court has not adopted a general blanket discovery rule with respect to interpreting federal statutes of limitations: "TRW concludes that some periods of limitations start with discovery and others not, with the difference depending on each provision's text, context, and history." *Id.* (citing *TRW, Inc. v. Andrews*, 534 U.S. 19, 27 (2001)); *see also United States v. Midwest Generation*, LLC, 781 F. Supp. 2d 677, 692 (N.D. Ill. 2011).

The SEC next relies on *Gabelli*. *Gabelli* held that a claim "first accrues" under § 2462 when the government discovers the violation, rather than when the violation occurs. 653 F.3d at 60. "[I]t would be unnecessary for Congress to expressly mention the discovery rule in the context of fraud claims, given the presumption that the discovery rule applies to these claims unless Congress directs otherwise." *Id.* (citing *Holmberg*, 327 U.S. at 397). *Gabelli* chiefly relied on authority such as *Bailey* and *Holmberg*. The court asserted that the discovery rule does not govern the accrual of most claims because they "do not involve conduct that is inherently self-concealing." 653 F.3d at 59.[7] The application of

---

there is no genuine dispute of material fact as to whether Bartek's and Richardson's alleged fraudulent acts were self-concealing." Feb. 2011 Order at 14. As noted earlier, the SEC does not appeal the court's ruling on its equitable claims. SEC Initial Brief at p.19 n.31, p.28 n.33.

[7] *Gabelli* noted that it is all-too-common that the discovery rule is confused with fraudulent concealment. It wrote that "[u]nder the discovery rule, the statute of limitations for a particular claim does not accrue until that claim is discovered, or could have been discovered with reasonable diligence, by the plaintiff. As a general matter, this rule does not govern the accrual of most claims because most claims do not involve conduct that is inherently self-concealing. However, since fraud claims by their very nature involve self-concealing conduct, it has been long established that the discovery rule applies where, as here, a claim sounds in fraud." 653 F.3d at 59. "The fraudulent concealment doctrine, by contrast, is an equitable tolling doctrine, not an accrual doctrine. Under the fraudulent concealment doctrine, even when a claim has already accrued, a plaintiff may benefit from

No. 11-10594

*Bailey* and *Holmberg* fit the facts under *Gabelli* as that case involved an inherently self-concealing fraudulent scheme, circumstances that are not found in this case. *Core* is applicable here because it grappled with § 2462's relevant language to conclude that the "first accrued" language means the date of the violation. *Core*, 759 F.2d at 482; *see also 3M*, 17 F.3d at 1462 ("In 1839, when Congress used the word "accrued," it could not possibly have intended the word to incorporate any discovery of violation rule."); *Williams*, 104 F.3d at 240.

## B. Whether or not Permanent Injunctions and O/D Bars are Equitable Remedies

On appeal, the SEC reasserts that permanent injunctions and O/D bars are equitable remedies and not penalties under § 2462. Equitable remedies would not be subject to § 2462's time limitations. The SEC requested that the district court permanently enjoin the Defendants from violating any securities laws and bar the Defendants from serving as officers or directors at any public company. The court denied the request finding that injunctive relief and O/D bars, as a matter of law, are construed as penalties because: (1) these remedies would have significant collateral consequences to the Defendants; (2) they do not address the past harm caused by the Defendants; and (3) the remedies do not focus on preventing future harm due to the low likelihood that the Defendants would engage in similar harmful behavior in the future.

---

equitable tolling in the event that the defendant took specific steps to conceal her activities from the plaintiff." *Id.*

The district court in this case found no conduct concealing fraud. And, to the extent that the SEC argues for the discovery rule's application whenever fraud is alleged, we have rejected an automatic application of a fraud discovery rule into a federal statute when the statute is "explicit in commanding" at what moment a suit must be brought. *See United States v. Borin*, 209 F.2d 145, 147-48 (5th Cir. 1954). In rejecting the government's "discovery of fraud" argument in a False Claims Act action, *Borin* reasoned that the "emphatic language must have been employed [by Congress] with full recognition of the fact that in most cases the falsity of the claim would remain concealed for a long time. The intention seems clear that the time would not be extended on account of any fraud or concealment." *Id.* (citations omitted).

10

No. 11-10594

A "penalty" is defined as "[p]unishment imposed on a wrongdoer, usu[ally] in the form of imprisonment or fine..." Black's Law Dictionary 1247 (9th ed. 2009). A "penalty" is "[ ] punishment imposed by statute as a consequence of the commission of an offense." *Johnson v. S.E.C.,* 87 F.3d 484, 487 (D.C. Cir. 1996) (citing Black's Law Dictionary 1020 (5th ed. 1979)). Other legal sources similarly define "penalty" as "[a] punishment; a punishment imposed by statute as a consequence of the commission of a certain act." *Id.* (citing 2 Burrill's Law Dictionary (1871)). The words "'penalty of forfeiture, pecuniary or otherwise, accruing under the laws of the United States'...refer to something imposed in a punitive way for an infraction of a public law..." *Meeker v. Lehigh Valley R.R. Co.,* 236 U.S. 412, 423 (1915) (interpreting the predecessor statute to § 2462). The D.C. Circuit in *Johnson* examined the meaning of "penalty" under § 2462. 87 F.3d at 487. It concluded that "a 'penalty,' as the term is used in § 2462, is a form of punishment imposed by the government for unlawful or proscribed conduct, which goes beyond remedying the damage caused to the harmed parties by the defendant's action." *Id.* at 488. The court agreed with the SEC that the "test for whether a sanction is sufficiently punitive to constitute a 'penalty' within the meaning of § 2462 is an objective one..." *Id.*

The SEC cites various authority to argue that § 2462 is limited to a sanction that involves the collecting of money or property.[8] These authorities do not limit the term "penalty" to the narrower definition that the SEC suggests. In fact, even within the SEC's own argument, it shows that the term "penalty" is used in the broader sense of the word:

> "As Justice Story explained in *United States v. Mann,* 26 F. Cas. 153, 1154 (C.C.D.N.H. 1812) (involving the district court's "exclusive

---

[8] On appeal, the SEC construes the term "penalty" under § 2462 narrowly and disagrees with *Johnson's* application. At the district court, however, the SEC cited to *Johnson* to define the term.

original jurisdiction of all suits for penalties and forfeitures incurred under the laws of the United States"), although the "words" 'penalty and forfeiture' are often used in a broad sense, as including every description of punishments," they are often used in statutes and treatises in "a more restrained and narrow sense."

SEC Initial Brief at p.37. By the SEC's own admission, the term "penalty" may encompass both a broad and narrow meaning. The term "penalty" is not strictly used for monetary or property sanctions but rather encompasses a variety of punishments (e.g. death penalty). The SEC's narrow interpretation is incorrect.

The Commission asserts that a permanent injunction and O/D bars are remedial, thus are not punishment. Although traditionally remedial, the Supreme Court has recognized that "even remedial sanctions carry the sting of punishment." *United States v. Halper*, 490 U.S. 435, 447 n.7 (1989)[9] (citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 551 (1943)). And, determining whether an injunction here is a "penalty" or simply remedial requires a look at the nature or characteristic of the injunction. *See United States v. Telluride Co.,* 146 F.3d 1241, 1245-46 (10th Cir. 1998). *Johnson* employed an objective test to determine the punitive nature of a sanction under §2462. 87 F.3d at 488. "[I]n determining whether the sanction is a penalty [under § 2462,] a court must objectively consider "the degree and extent of the consequences to the subject of the sanction...as a relevant factor." *Id.* at 488. Under *Johnson's* test, the court should consider the nature of the remedies sought by the SEC – here, the permanent injunctions and O/D bars to working at public companies. The district court considered the extent of the collateral consequences that would result from the O/D bars and injunctions, how this relief would remedy the alleged damage caused by the Defendants' conduct, and

---

[9] *Halper* was invalidated on other grounds by *Hudson v. United States*, 522 U.S. 93, 98 (1997).

whether the remedies focus on preventing future harm.  We agree with the court's determination.

The SEC's sought-after remedies would have a stigmatizing effect and long-lasting repercussions.  Neither remedy addresses past harm allegedly caused by the Defendants.  Nor does either remedy address the prevention of future harm in light of the minimal likelihood of similar conduct in the future. Further, relief sought in the instant case is more severe than that in *Johnson*. The petitioner in *Johnson* was censured and suspended from working with any broker or dealer for six-months.  87 F.3d at 486.  Here, the SEC is essentially seeking a lifetime ban against the Defendants.  Courts have held that such long term bans can be construed as punitive.[10]  Based on the severity and permanent nature of the sought-after remedies, the district court did not error in denying the SEC's request on grounds that the remedies are punitive, and are thus subject to § 2462's time limitations.

## VI. Conclusion

For the reasons stated above, we AFFIRM the district court.

---

[10] Various cases hold that excluding a person from their chosen profession is considered a penalty or punitive in nature.  *See e.g. United States v. Lovett*, 328 U.S. 303, 313, 316 (asserting that the purpose of Section 304 was to permanently bar the petitioners from government service and that a "permanent proscription from any opportunity to serve the Government is punishment, and of a most severe type."); *see also Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 229 (5th Cir. 1998) ("Although disbarment is intended to protect the public, it is a 'punishment or penalty imposed on the lawyer.'") (citing *In re Ruffalo*, 390 U.S. 544, 550 (1968)).